[L. A. No. 1167.   Department One.—October 9, 1903.]

JOHN A. HANCOCK, Respondent, v. BOARD OF EDUCATION OF CITY OF SANTA BARBARA, Appellant.

HIGH SCHOOL—ESTABLISHMENT BY SCHOOL DISTRICT—HIGH-SCHOOL BOARD—EMPLOYMENT OF PRINCIPAL BY HIGH-SCHOOL DISTRICT— COLOR OF LAW—COLLATERAL ATTACK BY BOARD OF EDUCATION.—In an action upon a contract alleged to have been made by the high-school board of a high-school district, for the employment of a principal of the high school for one year, where it appears that the high school was established by the school district under the act of March 20, 1891, and was maintained continuously after the repeal of that act, and the passage of the act of 1893, authorizing the establishment of a high school by the board of trustees of a school district, which was to constitute the high-school board, and as such to have the management and control of the high school, and the board of trustees of the school continuously claimed and assumed to be a high-school board of a high-school district, and acted as such from the establishment of the high school down to the organization of a board of education under the city charter, which made the board of education succeed to all the rights and be responsible for all of the obligations of the school trustees of the school district, its action as a board of trustees of a high-school district was under color of law, and cannot be collaterally attacked by the board of education.

ID.—POWER OF BOARD OF EDUCATION TO SUE AND BE SUED—CONSTRUCTION OF CODE.—The provisions of the Political Code that the trustees of every school district may sue and be sued, and making the trustees liable in their official capacity for judgments for salaries against the district, must be construed to apply to and include city boards of education, as well as the boards of country school districts.

ID.—PARTIES TO ACTION—BOARD OF EDUCATION—CITY.—The action by the principal for the remainder of his salary for the school year

was properly brought against the board of education of the city, and not against the city.

ID.—CONTINUANCE OF SCHOOL DISTRICT—PRESUMPTION—EXISTENCE UNDER CHARTER.—Every city constitutes a separate school district, including such outlying territory as may be annexed to it; and where a school district bearing the same name as that of the city was, prior to the city charter, formed under the state law, and does not appear to have been changed, dissolved, or extinguished, it must be presumed that it still exists.

ID.—EFFECT OF CHARTER—SCHOOL SYSTEM NOT A MUNICIPAL AFFAIR.— A city charter adopted under the provisions of the constitution has no effect whatever upon the existence or legal character of a school district formed under the general law. The school system is a matter of general concern, and not a municipal affair.

ID.—CHANGE OF GOVERNING BODY—BOARD OF EDUCATION—TRUSTEES— OBLIGATIONS OF DISTRICT.—The function of the city under the charter is simply to furnish the officers of the board of education, which as a governing body under the charter superseded the former board of school trustees. The board of education is in fact a board of trustees, and its name is simply another name for trustees; and its substitution for the school board had no greater effect upon the obligations of the district than the coming in of a new school board upon the expiration of the terms of the old members.

ID.—PLEADING—AMENDMENT OF COMPLAINT—DISCRETION—CAUSE OF ACTION NOT CHANGED.—It was in the discretion of the court to allow the plaintiff to amend his complaint, after the evidence had been taken and the cause submitted, where the additional facts and circumstances alleged do not constitute any change in the nature of the cause of action.

ID.—BREACH OF CONTRACT—DAMAGES—PRESUMPTION.—In the action by the principal for the salary of which he was unlawfully deprived by the board of education in breach of the contract of employment, where it appears that he was ready and willing to perform the duties required, but was prevented by the unjustifiable acts of the defendant, the presumption is, in the absence of any claim by the defendant that plaintiff could have obtained or did obtain other employment, that he was damaged in the sum which he would have received under the contract.

APPEAL from a judgment of the Superior Court of Santa Barbara County.   W. S. Day, Judge.

The facts are stated in the opinion of the court.

Henley C. Booth, City Attorney, for Appellant

The act of 1891 was unconstitutional.   (*McCabe* v. *Carpenter,* 102 Cal. 469.)   The unconstitutionality of the method

of levying the high-school tax affected the machinery without which the high-school district could not run, and made the whole act unconstitutional. (*Orange County* v. *Harris,* 97 Cal. 600; *Wills* v. *Austin,* 53 Cal. 152; *Purdy* v. *Sinton,* 56 Cal. 133; *People* v. *Perry,* 79 Cal. 105; *Marsh* v. *Supervisors,* 111 Cal. 368.) No school district was organized under the act of 1893, after the act of 1891 was repealed, and there was no *de facto* organization under that act, as there was no attempt at a *de jure* organization thereunder. (*People* v. *La Rue,* 67 Cal. 526; *Gilkey* v. *How,* 105 Wis. 41; *First Nat. Bank* v. *Davies,* 43 Iowa, 424; *Doyle* v. *Mizner,* 42 Mich. 332; *Garnett* v. *Richardson,* 35 Ark. 144; *Indianapolis Furnace etc. Co.* v. *Herkimer,* 46 Ind. 142; *Abbott* v. *Omaha Smelting etc. Co.,* 4 Neb. 416; *Childs* v. *Hurd,* 32 W. Va. 66; *Jones* v. *Aspen County,* 21 Colo. 263; *City of Guthrie* v. *Wylie,* 6 Okla. 61.) There can be no *de facto* officers without a *de jure* office. (Dillon on Municipal Corporations, sec. 276; *People* v. *White,* 24 Wend. 520; *De Corah* v. *Ballis,* 25 Iowa, 12; *Norton* v. *Shelby County,* 118 U. S. 425; *White* v. *School District,* 8 Atl. (Pa.) 443.)

Richards & Carrier, for Respondent.

The repeal of the act of 1891 did not affect the validity of the high-school organization founded under it. (*People* v. *O'Brien,* 111 N. Y. 1, 45;[1] *Walker* v. *Walker,* 155 N. Y. 77, 81.) The distinction between boards of trustees and boards of education is but nominal. (*Board of Education* v. *Board of Trustees,* 129 Cal. 599; *Kennedy* v. *Miller,* 97 Cal. 434.) School districts are governed by the general law. (Pol. Code, sec. 1623.) The high school established by the school district in 1890 is recognized under the charter (secs. 125, 477). This recognition validates its establishment. (*Koch* v. *North Avenue Ry. Co.,* 75 Ind. 222.) User of powers conferred by law makes a corporation *de facto.* (*M. E. Church* v. *Pickett,* 19 N. Y. 482, 485; *Lakeside Ditch Co.* v. *Crane,* 80 Cal. 188; *Smith* v. *Sheeley,* 12 Wall. 358; *Coxe* v. *State,* 144 N. Y. 396, 409; *Speer v. Board of County Commissioners,* 88 Fed. 749, 765; *People* v. *Maynard,* 15 Mich. 463; *State* v. *Des Moines,* 96 Iowa, 521;[2] *Coast Co.* v. *Spring Lake,*

[1] 7 Am. St. Rep. 684, and note.     [2] 59 Am. St. Rep. 381.

56 N. J. Eq. 615.)   There was a *de facto* organization of a high school under the act of 1891.   (*School District* v. *School District,* 45 Kan. 543; *Ashley* v. *Board of Supervisors,* 60 Fed. 55; *Cent. Trust Co.* v. *Toledo etc.,* 82 Fed. 642, 649.)

SHAW, J.—This is an appeal by the defendant from a judgment in favor of the plaintiff.   The appeal was taken within sixty days after the rendition of judgment, and the evidence is brought up by a bill of exceptions.

The action is upon a contract alleged to have been executed by the high-school board of the Santa Barbara High-School District, in August, 1899.   The theory of the plaintiff is, that the school trustees, constituting the board of education of the city of Santa Barbara, upon their coming into office under the charter of that city, adopted in 1899, succeeded to all the rights and obligations previously existing of the high-school district, and were obliged to carry out the contract which the plaintiff had made with that district.   The principal theory of the defendant is, that the so-called high-school district, which, by its board, is alleged to have made the contract, had no existence either in law or in fact sufficient to enable it to make the contract, and that, therefore, it cannot be said that there was any contract or obligation which the defendant could have assumed, and hence there can be no recovery.

Previous to 1891, the Santa Barbara School District had been organized, and included the territory within the city of Santa Barbara and certain outlying territory duly annexed thereto.   The act of March 20, 1891, (Stats. 1891, p. 182,) purported to authorize a city of more than fifteen hundred inhabitants to maintain a high school.   Soon after that act was passed an election was called in the Santa Barbara School District to determine whether or not a high school should be established in the district under that law.   It resulted favorably, and thereupon proceedings were taken to establish a high school.   From that time continuously up to the first Monday of January, 1900, the trustees of the Santa Barbara School District maintained a high school therein in which the branches prescribed under the law as high-school studies were taught, and from year to year during that period a tax was levied annually in said district for the support of said high school, and the moneys obtained thereby were expended by

the trustees of the district in the maintenance of the school. In 1893 (Stats. 1893, p. 236) the law of 1891 authorizing the establishment of high schools by cities was repealed, and a law was passed adding section 1670 to the Political Code, authorizing any city or school district having a population of a thousand inhabitants or more to organize and establish a high school, and providing that the board of education of the city, or board of school trustees of the district, should constitute the high-school board, and should have the management and control of the high school. Section 1670 was amended in 1897 (Stats. 1897, p. 79), but not so as to affect the question in this case. The schools of the Santa Barbara School District, which included the city, had been during this period managed and governed by the trustees of the Santa Barbara School District, and, in addition to their functions as trustees of said district, they also claimed that there was a legal high-school district of the same name, and assumed to act as a high-school board for such Santa Barbara High-School District. In August, 1899, the trustees of the Santa Barbara School District, assuming also to act as the high-school board for the so-called Santa Barbara High-School District, made a contract with the plaintiff in this action, whereby the high-school board, as such, employed the plaintiff as principal of the Santa Barbara High School for the term of one school year, from September 4, 1899, to consist of ten school months, at the salary of one thousand dollars for the school year. By the same contract the same trustees, assuming to act as the board of trustees of the Santa Barbara School District, employed the plaintiff as teacher of the ninth grade for one school year, consisting of ten school months, at the salary of one hundred dollars a month. The contract was in writing, and is set forth in the complaint. The plaintiff proceeded under this contract to perform the duties of principal of the high school and teacher of the ninth grade for the months of September, October, November, and December of 1899, and was paid therefor monthly at the contract rate. A new charter for the city of Santa Barbara was approved by the legislature of 1899. (Stats. 1899, p. 448.) By section 172 thereof it was provided that it should go into effect on the first Monday in January, 1900, (Stats.

of 1899, p. 486.) By article XII of the charter the school department of the city was put under the government of a board of education, to consist of five members, to be called school trustees. Section 128 authorizes the board to establish and maintain high schools. Section 145 provides that ''the board of education succeeds to all the property rights and obligations of the school trustees of the Santa Barbara School District heretofore existing.'' On the first Monday of January, 1900, there was in the high-school fund, under the control of the school district, more than seven thousand dollars in money. The ordinary primary and grammar schools were being carried on in the city, as was also the so-called high school, the plaintiff acting as principal, and also as teacher of the ninth grade. On that day the previously existing board of school trustees ceased to exercise any of the functions of their office, and turned over to the board of education all the property together with the management of the district school and the high school aforesaid. The defendant board of education received the money of the school district, including the high-school fund, and proceeded with the maintenance and management of the district school and the high school as before, using the money in the high-school fund for the support of the high school. But instead of continuing the employment of the plaintiff under the contract, it required him to continue as teacher of the ninth grade, and refused to allow him to perform the duties of principal of the high school. During the remaining six months of the school year the plaintiff continued to perform the duties of teacher of the ninth grade, and held himself at all times ready and willing to perform all the duties of principal of the high school as required by the contract during said months, but the defendant refused to allow him to do so. This suit is for the purpose of recovering the remainder of the salary, as principal, which would have accrued during the six months which he was thus prevented from serving.

The defendant claims that the act of 1891 is unconstitutional by reason of the fact that the section thereof purporting to give the power to raise taxes for the support of the schools was decided to be unconstitutional in *McCabe* v. *Carpenter*, 102 Cal. 469, and that this provision is so important to the ob-

ject of the act that the entire act must be declared invalid. The further contention is, that as there was no attempt to organize under section 1670 of the Political Code, passed in 1893, and amended in 1897, and as the act of 1891 was expressly repealed thereby, the high school established, or claimed to have been established, under the act of 1891 ceased to have any legal existence whatever; that as there was never any attempt to organize under the act of 1893, nor under the amendment of 1897, there never has been a legal high school, nor any legal or public body authorized to maintain a high school, or make contracts with relation thereto, and consequently that the contract involved in this case is absolutely void, binding neither upon the preceding school-district trustees nor upon the present board of education.

We do not think that this contention of the defendant can be maintained in this action. "Where a municipal corporation is acting under color of law, and its existence is not questioned by the state, it cannot be collaterally drawn in question by private parties." (1 Dillon on Municipal Corporations, sec. 43a.) "In proceedings where the question whether a corporation exists or not arises collaterally, the court will not permit its corporate character to be questioned, if it appears to be acting under color of law, and recognized by the state as such." (Cooley on Constitutional Limitations, 309.) It is established by the evidence and findings, and is practically admitted in this case, that the trustees of the Santa Barbara School District during all the period from the original establishment of the high school, in 1891, down to the time when the new charter took effect, in 1900, claimed to have authority to act as trustees of the so-called high-school district; that from year to year they levied taxes, which were voluntarily paid by the citizens and taxpayers; that these taxes were received by the authorities as required by the act of 1891 during its existence, and by the acts of 1893 and 1897 thereafter, and expended under those acts in the maintenance of the high school over which the plaintiff was employed as principal.

Instead of the state questioning the existence of the district and the authority of these parties to act as trustees, the contrary appears. The legislature and the citizens of the Santa Barbara district recognized the existence of the former

school organization by the provisions of the charter above quoted. During all the time after the passage of the law of 1893 there was a valid law in existence authorizing the formation of such an organization, and providing that the school trustees of the district should constitute the high-school board, and should have the management and control of the high school. It was under this law that the district claimed to have its being. The so-called organization, therefore, was acting under color of law, and its existence and validity cannot be questioned in this action. For these reasons we are of the opinion that the court below correctly decided that the defendant was bound by the contract set forth in the complaint.

The defendant further contends that the plaintiff should have begun the action against the city of Santa Barbara, and not against the board of education. This claim is not tenable. Every city constitutes a separate school district, including such outlying territory as may be legally attached to it. (Pol. Code, sec. 1576.) The Santa Barbara School District was formed under the state law, and as there is nothing in the record to show that it has ever been changed, dissolved, or discontinued, it must be presumed that it still exists. A city charter adopted under the provisions of the constitution has no effect whatever upon the existence or legal character of a school district formed under the general law. The school system is a matter of general concern, and not a municipal affair. (Kennedy v. Miller, 97 Cal. 434.) The function of the city under the charter is simply to furnish the officers who compose the governing body of the district, and when the new charter was adopted the former board of school trustees was superseded as the governing body by the city board of education. There was no change whatever in the existence of the district, but simply a change in the officers who governed it. The code provides that the trustees of every school district may sue and be sued (Pol. Code, sec. 1575), and that the trustees are liable in their official capacity for judgments for salaries against the district. (Pol. Code, sec. 1623.) Although the present governing body is called a board of education, yet it is in fact a board of trustees, and the term "board of education" is simply another name for trustees.

These sections, authorizing the trustees to sue and be sued, make the board responsible for judgments, and must be construed to apply to and include city boards of education, as well as the boards of country school districts. (*Kennedy* v. *Miller*, 97 Cal. 434; *Board of Education* v. *Board of Trustees,* 129 Cal. 606.) It follows that an action can be maintained against the board of education whenever there is a cause of action against it in existence, and that the city board of education, as the successor of the former board of the Santa Barbara School District, is bound by the obligations of the former board, and may be sued thereon. The substitution of the board of education for the school board had no greater effect upon the obligations of the district than would the coming in of a new school board upon the expiration of the terms of the old members.

It is also contended that the court erred in allowing the plaintiff, after the evidence had been taken and the cause submitted, to file an amended complaint. This contention is based upon the theory that the amended complaint changed the cause of action. What has been said disposes of this proposition. The action still remains upon the contract made by the former board, and, as there has been no change in the actual existence of the corporation which made the contract and was responsible for it, there has been no such change in the cause of action as would constitute a departure. The additional facts and circumstances alleged in the amended complaint do not involve any change in the nature of the cause of action. It still remained an action upon the contract, and it was within the discretion of the court to allow the amendment.

The appellant contends also that the plaintiff did not show any damages for the breach of contract. It appears that he was at all times ready and willing to perform the duties required, but was prevented from doing so by the unjustifiable acts of the defendant. Under these circumstances, in the absence of any claim by the defendant that the plaintiff could have obtained, or did obtain, other employment, the presumption is, that he was damaged in the sum which he would have received under the contract if he had performed the duties required. (*Stone* v. *Bancroft,* 112 Cal. 652; *Stone* v. *Ban-*

*croft,* 139 Cal. 78.)    There is no claim that the services of the plaintiff were dispensed with for considerations of economy or for the better management of the school.    The action of the defendant was based upon the theory that it was under no obligation to carry out the pre-existing contracts of the former school board.

The judgment of the court below is affirmed.

Angellotti, J., and Van Dyke, J., concurred.

Hearing in Bank denied.