GRENNAN, *County Treasurer,* et al. v. CARSON et al.

No. 1056. Opinion Filed March 8, 1910.

(107 Pac. 925.)

1. STATES — Admission of Territory — Preservation of Existing Rights. Section 1 of the Schedule to the Constitution preserved all existing rights, actions, contracts, etc., as fully as if no change in the form of government had taken place, and, in order that no inconvenience might arise, all laws in force in the territory of Oklahoma at the time of the admission of the state into the Union which were not repugnant to the Constitution, or locally inapplicable, were extended to and put in force in the state.

2. SCHOOLS AND SCHOOL DISTRICTS—Power of Boards of Education—Taxation. Whilst, under the laws in force in the territory of Oklahoma that were extended to and put in force in the state, the duties of the officers of cities of the first class are confined to the care, management, and control of the cities and their finances, they provide that each city of the first class shall constitute a separate school district; that the public schools of each city shall be a body corporate, and shall possess the usual powers of a corporation for public purposes, by the name and style of the board of education of the city of ———, of the state of Oklahoma; that such boards of education shall have power to organize and maintain a system of graded schools, and to exercise the sole control over schools and school property of the city. And said laws furnish such boards of education with the machinery and officers requisite for the assessment of property and for the levy and collection of taxes to pay the debts and carry on such free school system.

3. SCHOOLS AND SCHOOL DISTRICTS—Indebtedness—Shifting to School District. Admitting that the school bonds issued by the cities of the Indian Territory evidenced a debt against such cities prior to statehood, yet, upon the admission of such territory into the Union as a state, there was no constitutional impediment in the way of the people and their representatives in the Constitutional Convention shifting this part of the municipal responsibility upon a new corporation created for the sole purpose of organizing and maintaining a free public school system, when such corporation is composed of substantially the same community, includes substantially the same taxable property, and holds by transfer without consideration the public property acquired by the expenditure of the funds arising from the sale of said bonds, provided the new method for the payment of the

debt is a substantial equivalent of the method in force at the time the debt was contracted.

(Syllabus by the Court.)

*Error from District Court, Coal County; A. T. West, Judge.*

Action by J. H. Carson and others against Patsy Grennan, County Treasurer, and others. From a decree granting a permanent injunction, defendants bring error. Reversed and dismissed.

*Fooshee & Brunson,* for plaintiffs in error.—Citing: *Mobile v. Watson,* 116 U. S. 289; *Miller v. Pensacola,* 2 Woods, 623; *O'Connor v. City of Memphis,* 6 Lea ('Tenn.) 730; *Mt. Pleasant v. Beckwith,* 101 U. S. 514; *New Orleans v. Railroad Co.,* 26 La. Ann. 478; *Guthrie v. Wylie* (Okla.) 55 Pac. 103; *Gerard v. Philadelphia,* 7 Wall. 1.

*Cutler, Trice & McInnis,* for defendants in error.—Citing: *State v. Bridges,* 20 Okla. 533; *State v. Ledbetter* (Okla.) 97 Pac. 834.

KANE, J. The defendants in error, plaintiffs below, commenced this suit against the plaintiffs in error, defendants below, to restrain the collection of a tax levy of five mills made by the board of education of the school district of the city of Coalgate, Okla., for the year 1908, to provide a sinking fund, and to pay the interest on certain school bonds issued by the city council of the city of Coalgate, Ind. T., during the year 1906. Upon the hearing the court below granted a permanent injunction, to reverse which decree this proceeding in error was commenced.

The agreed statement of facts upon which the case was tried below is, in substance: It is hereby agreed: That the following statements are the true and correct statement of facts in this case, to wit: That some time after the Curtis bill (Act June 28, 1898, c. 517, 30 Stat. 495) was passed and put in force in the Indian Territory, the citizens of the city of Coalgate organized as a municipal corporation, under the Curtis bill, and the statutes of Arkansas put in force thereby. That about April, 1903, the mayor of the city of Coalgate was petitioned by the required number of

petitioners to call an election for the purpose of establishing a school district. That an election was called and held in conformity with the provisions of the statutes of Arkansas, to determine whether or not there should be a school district organized. That at said election the voters of said city decided in favor of establishing a free school district, and elected members of a board of education. That the board of education so elected acted as a board of education of the Coalgate school district up until statehood, and 'has been recognized as a school district and has sued and been sued as such from the time of its organization up until statehood. That the city council of the city of Coalgate, Ind. T., called an election to be held on the 13th day of August, 1906, within the city of Coalgate, Ind. T., to determine whether the city of Coalgate, Ind. T., should issue $27,000 bonds for the purpose of building school buildings within the city of Coalgate, Ind. T., which election resulted in favor of the bond issue. On the —————— day of ——————, 1906, the city council passed an ordinance. providing for the issuing of $27,000 bonds for the building of school buildings within the city of Coalgate, Ind. T. That in pursuance to said ordinance said bonds were issued for the purpose of building school buildings in the sum of $27,000. That the city of Coalgate, Ind. T., assessed and levied taxes for a sinking fund and interest for said bond issue up until statehood. When statehood was declared, the board of education of the city of Coalgate was organized under the laws extended over and put in force in the state. That the new corporation was composed of substantially the same community, and included substantially the same taxable property, as the old city of Coalgate, and the old school district. That the city council turned over to the said board of education the sum of $1,572.48 sinking fund, and interest, on said $27,000 school bonds. That for some reason the sinking fund for school bonds has been used by the city, leaving a small balance of $1,572.48. That prior to statehood the city council had collected and paid the interest on the school bond coupons numbered 1, 2, and 3. On August 28, 1908, the board of education paid $673 interest on coupon numbered 4. On De-

cember 9, 1908, the board of education paid New York exchange of $3.31 on coupon numbered 4. On February 31, 1909, the board of education paid interest coupon numbered 5, of $676.69— leaving a balance in the hands of the board of education on the sinking fund and interest, as turned over by the city of Coalgate, Okla., of $109.12. That on the 14th day of April, 1908, the board of education of the city of Coalgate, Okla., levied their taxes, as shown by copy of resolution hereto attached marked "Exhibit C," and made a part thereof. That said levy includes a levy of 2½ mills for sinking fund on school bonds, and 2½ mills for interest on said school bonds. That the two levies of 2½ mills here mentioned were for the sinking fund and interest on the $27,000 school bonds, issued by the city of Coalgate, Ind. T., in 1906, as aforesaid, and that at the time said levy was made said school district owed the $27,000 aforesaid, and that said levies are those attacked by this suit. That the plaintiffs are the largest taxpayers in the city of Coalgate, Okla., and own more property within the limits of said city than any other taxpayers therein. That the assessed valuation of the taxable property within the city of Coalgate, Okla., is about $1,200,000, and the assessed valuation of the taxable property within the Coalgate school district is about $1,400,000. That there is about $200,000 worth of taxable property within the Coalgate school district, lying outside the city limits of the city of Coalgate, Okla. That the interest on said $27,000 bonds above referred to is $1,350 per year. That said bonds were issued September 1, 1906. That the sinking fund as provided by said ordinance is $1,350 per year. That as per ordinance the sinking fund for the years 1906, 1907, and 1908, should have been collected, and that there should have been on hand the sum of $5,450; but, instead of this amount, there is on hand at the present time $190.12 for the payment of said sinking fund and interest. That there is now in the hands of the county treasurer of Coal county, Okla., sinking fund and interest collected for the year 1909 on said five mills levy the sum of $4,105.77, which said amount has been held up by the

county treasurer of Coal county, Okla. That the interest on said $27,000 bonds, amounting to $1,350, will be due on September 1, 1909, and March 1, 1910, respectively, $650 due on each date. That there are no funds in the hands of the treasurer of the Coalgate school district with which to pay said interest, except the $109.12 above referred to. That there is now delinquent taxes for all purposes in said school district the sum of $1,958.08. That subsequent to the bringing of this action under the order of the court in this case, the plaintiffs have paid taxes, and the county treasurer has received and receipted for all the taxes, except the five mills complained of; such payments and receipts being made without prejudice. That after the said $27,000 bonds were issued and sold by the mayor and city council of the city of Coalgate, Ind. T., the money was collected by the city treasurer of the city of Coalgate, Ind. T., and placed to the credit of the school district, and was subject to the warrants of the board of education of said school district. That the board of education purchased lots and campus for two school buildings, and erected on said campus two eight-room school buildings at a cost of $32,000. That the $27,000 was paid out in the erection of said school building, and the balance was paid by warrants issued by the board of education, and in November, 1908, the board of education of the school district for the city of Coalgate, Okla., funded said warrant indebtedness by a bond issue against the board of education of the city of Coalgate, Okla. That at the time said lots were purchased upon which to erect said school buildings deeds were made to the lots to the Coalgate school district of Coalgate, Ind. T., and said deeds were never made to the city, and the city at no time ever had title to said lots, and the board of education for the Coalgate school district has not since statehood made a refunding issue of bonds and paid to the city of Coalgate under the statute providing for a refunding issue. All the parties hereto reserve the right to object to this statement of facts or any part thereof on the ground of irrelevancy or immaterialty, or both.

The court in its decree found as a matter of fact that the property purchased by the school district belongs to the board of

education of the city, and not to the city of Coalgate, Okla, but as a matter of law the city of Coalgate, Okla., was liable to pay said indebtedness.

In *Wilhite v. Mansfield et al.*, 23 Okla. 246, 99 Pac. 1087, it was held by this court:

"Evidently it was the purpose ·of the framers of the Constitution that local governments should neither be destroyed, disarranged, nor interfered with, except where such changes were incident to the change in the form of government, or where the statute by virtue of which they existed and were maintained was repugnant to some provision of the Constitution. School district, township, and municipal governments, and county high schools in counties that were not divided, beyond any question were preserved and brought over by the provisions of the Constitution."

In that case during territorial days a county high school was established in Woods county, at Helena. By section 8, art. 17, of the Constitution, there was detached from the territory formerly embraced by Woods county the county of Alfalfa, embracing the place where said high school was located. It was held that after statehood it became the high school of Alfalfa county, and it was the duty of the board of county commissioners of said county to appoint trustees thereof. It is quite clear that the finding of the court below to the effect that the property belonging to the old school district before statehood became the property of the new board of education after statehood is supported by the foregoing decision. In the case of *City of Guthrie v. Wylie*, 6 Okla., 61, 55 Pac. 103, it was held that:

"A municipal corporation by law the successor of another, and which acquires all the property, . franchises, rights, and improvements, and embraces the same territory, and is composed of the same people as its predecessor, is liable for the valid contracts and legal liabilities of such predecessor."

Counsel for defendants in error contend that the foregoing rule does not apply to the case at bar, because: (a) Prior to the advent of statehood the bonds concerned in this case were a debt of the city of Coalgate, Ind. T. (b) The city of Coalgate, Okla., continues, not succeeds, the city of Coalgate, Ind. T. and, so far as con-

cerns any of the doings of the city prior to the advent of statehood, the board of education is in no wise its successor. (c) The city of Coalgate, Okla., continuing the city of Coalgate, Ind. T., alone is responsible for its debts, and has the power to make provision for their payment. (d) The board of education does not own these bonds, and hence has no authority to levy taxes for their payment.

The legal status of municipal corporations in that part of the state formerly known as Indian Territory, upon the advent of statehood, is fully defined by this court in *State ex rel. Kline v. Bridges,* 20 Okla., 533, 94 Pac. 1065, as follows:

"Section 2 of the Schedule (section 451, Bunn's Const. Okla.) extends to and keeps in force in the state, until they expire by their own limitations, or are altered or repealed by law, all laws in force in the territory of Oklahoma at the time of the admission of the state, which are not repugnant to the Constitution and are not locally inapplicable. The city of Chickasha, as a municipal corporation, after the admission of the state into the Union, could not operate or exercise its powers under the laws in force in the Indian Territory prior to the admission of the state, unless such laws were extended to and kept in force in the state. The state of Oklahoma is a different government from the government that existed in the Indian Territory prior to the admission of the state, and the laws for the administration of the Indian Territory prior to the admission of the state are no more the laws of the state of Oklahoma than they are of any other state of the Union, unless made so by the provisions of the Enabling Act or some provision of the Constitution. The Enabling Act contains no provision that extends in force in the state, after its admission into the Union, any of the laws governing municipal corporations that were in force in the Indian Territory prior to its admission; nor does the Constitution adopt or continue in force in the state any of said laws except certain specific laws for certain specific purposes, to which reference will be made later. The only laws in force in the state at the time of its admission under which incorporated cities and towns theretofore existing in the Indian Territory could operate were the laws of the territory of Oklahoma, extended in force in the state."

Taking the view of counsel for defendant in error that prior to statehood the incorporated cities of Indian Territory were vested with dual functions, powers, and duties—(1) the ordinary func-

tions, powers, and duties of cities, and (2) to establish and maintain free schools—it does not follow that their conclusions are correct. It was the policy of the framers of the Constitution, and the people when they adopted it, to separate these two departments of government. Under the laws in force in the territory of Oklahoma, that were continued and put in force in the state, the duties of the officers of cities of the first class are confined to the care, management, and control of the city and its finances; matters pertaining to education are intrusted to another corporate body. The mayor and council of cities of the first class are authorized to make general tax levies for purely city purposes only. Section 8009, Comp. Laws, Okla., 1909 (section 5831, St. 1893), provides:

"Each city of the first class shall be governed by the provisions of this article and shall constitute a separate school district." Section 8011, Comp. Laws, Okla., 1909, which corresponds with section 5833, St. 1893, provides:

"The public schools of each city organized in pursuance of this act shall be a body corporate and shall possess the usual power of a corporation for public purposes, by the name and style of 'the board of education of the city of ——— of the state of Oklahoma,' and in that name may sue and be sued and be capable of contracting or being contracted with, of holding and conveying such personal and real estate as it may come into possession of, by will or otherwise, or as is authorized to be purchased by the provisions of this act."

Section 8016, Comp. Laws Okla., 1909 (section 5838, Laws 1893), provides:

"The board of education shall have power to elect their own officers, except the treasurer; to make their own rules and regulations, subject to the provisions of this article; to organize and maintain a system of graded schools; to establish a high school whenever, in their opinion, the educational interests of the city demand the same; and to exercise the sole control over the schools and school property of the city."

Section 5854, Laws 1893, provides:

"The board of education, at the time of its annual levy of taxes for the support of schools as hereinbefore provided, shall also levy a sufficient amount to pay the interest as the same accrues on

Vol. 25—47

all bonds issued under the provisions of this article, and also to create a sinking fund for the redemption of said bonds which it shall levy and collect in addition to the rate of per cent, authorized by the provisions aforesaid for school purposes, and said amount of funds when paid into the treasury, shall be and remain a specific fund for said purposes only and shall not be appropriated in any other way except as hereinafter provided."

Section 1001, Comp. Laws Okla., 1909 (Laws 1907-08, p. 188) provides:

"School boards or boards of education now existing in any portion of the state of Oklahoma, in any city that has been declared by proclamation of the Governor to be a city of the first class since the admission of this state into the Union, shall have, possess and exercise all the rights, duties and powers provided by the laws of the state of Oklahoma, and shall have and possess every power formerly possessed under any other laws or granted to boards of education of cities of the first class by the laws as extended over the state of Oklahoma."

Admitting, then, that the school district bonds evidenced a debt against the city of Coalgate before statehood, there seems to be no constitutional impediment in the way of shifting this part of the municipal liability upon a new corporation created by law for the sole purpose of organizing and maintaining a free school system, when it is composed of the same community, includes substantially the same taxable property, is organized for the general purpose of administering the affairs of the department for which the indebtedness was incurred, and holds by transfer without consideration the public property acquired by the expenditure of the funds arising from the sale of said bonds, provided the new method for the payment of the debt is a substantial equivalent of the method in force at the time the debt was contracted. The courts have settled the question of the continuity of municipal corporations by the transfer of their material parts, and have held that whether such continuity is by identity or succession is practically immaterial in so far as the debts due to and from it were concerned. *O'Connor v. City of Memphis*, 6 Lea (Tenn.) 730.

"Neither the repeal of the charter of a municipal corporation, nor a change of its name, nor an increase or diminution of its ter-

ritory or population, nor a change in its mode of government, nor all of these things combined, will destroy the identity, continuity, or succession of the corporation, if the people and territory reincorporated constituted an integral part of the corporation abolished. The reason is to be found in the peculiar nature of such corporations. A charter for municipal purposes is an investing of the people of a place with the local government thereof, constituting an *imperium in imperio,* and the corporators and the territory are the essential elements; all else being mere incidents or forms. *Cuddon v Eastwick,* 1 Salk. 192; *Luehrman v. Taxing District,* 2 Lea (Tenn.) 425; *People v. Morris,* 13 Wend. (N. Y. ) 325; *People v. Hurlbut,* 24 Mich 44, 88, 9 Am. Rep. 103; *New Orleans R. Co. v. City of New Orleans,* 26 La. Ann. 478. And precisely as a change in the form of government, or even the conquest of a state, will not affect its rights or liabilities, whatever may be the incidental modifications, so neither will a change of the lesser empire. The property held by such corporation for public use cannot be subjected to the claims of creditors, and is only held by it as trustee. The only means at its disposal for the payment of debts consist, ordinarily, of the taxes which it is authorized to raise from the persons, property, and business within its territorial limits. The persons and property, or, as said above, the corporators and the territory, are the essential constituents of the corporation, and rights and liabilities naturally adhere to them." (*O'Connor v. City of Memphis, supra.*)

Section 1 of the Schedule to the state Constitution preserved all existing rights, actions, contracts, etc., as fully as if no change in the forms of government had taken place and, in order that no inconvenience might arise, all laws in force in the territory of Oklahoma at the time of the admission of the state into the Union which were not repugnant to the Constitution or locally inapplicable were extended to and put in force in the state. Among the laws thus extended we find the sections heretofore quoted, together with other sections pertaining to the establishment and maintenance of a free school system in cities of the first class, which furnishes a substantial equivalent to the system prevailing before statehood.

Even admitting the contention of counsel for defendant in error that section 6373, *supra,* providing that the board of educa-

tion shall levy taxes to pay interest and sinking fund on "all bonds issued under the provisions of this article," does not specifically confer power upon the board to levy taxes to pay the interest and provide a sinking fund to pay the principal on these particular bonds, yet the law in its entirety grants to the board the usual powers of a corporation for public purposes, and among those powers must be reckoned the power to provide for the payment of indebtedness incurred for school purposes. In *Broughton v. Pensacola,* 93 U. S. 266, 23 L. Ed. 896, it was said by Mr. Justice Field, in delivering the judgment, that:

"When a new form is given to an old corporation, or such a corporation is reorganized under a new charter, taking in its new organization the place of the old one, embracing substantially the same corporators and the same territory, it will be presumed that the Legislature intended a continued existence of the same corporation, although different officers administer its affairs; and, in the absence of express provision for their payment, it will also be presumed that the Legislature intended that the liabilities as well as the rights of property of the corporation in its old form should accompany the corporation in its reorganization."

In the case at bar the laws of the state furnish the board of education the machinery and officers requisite for the assessment of property and for the levy and collection of taxes to pay the debts and carry on a free public school system in cities of the first class. There is no reason why the taxes necessary to pay the interest and create a sinking fund for the redemption of the school bonds involved cannot be levied by the same officers. *Port of Mobile v. Watson,* 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620. Moreover such a construction will require cities of the first class and the board of education of such cities to perform from the start their respective governmental functions along the lines prescribed by the Constitution and laws of the state, and at the same time protect the contracts of private individuals or corporations with the old municipalities.

The judgment of the court below is reversed, and the cause·

remanded, with directions to dismiss the cause at the cost of the petitioners.

Dunn, C. J., and Hayes and Turner, JJ., concur; Williams, J., not participating.