Board of Education of City of Ardmore *et al.* v. State *ex rel.*

BOARD OF EDUCATION OF CITY OF ARDMORE *et al* v. STATE *ex rel.* BEST.

No. 949. Opinion Filed May 10, 1910.

(109 Pac. 563.)

1. SCHOOL'S AND SCHOOL DISTRICTS—Public School System—Control by State. The free public school system which the Legislature is directed to establish by article 13 of the Constitution is a matter of general state concern, and not a municipal affair.

2. SAME—Municipal Control. City charters adopted under section 3, art. 18, of the Constitution, authorizing any city containing a population of more than two thousand inhabitants to frame a charter for its own government, can only run current with, and never counter to, the general laws of the state touching the free public school system.

3. SCHOOLS AND SCHOOL DISTRICTS—Indebtedness — Submission of Question—Provisions Applicable. Section 26, of article 10, of the Constitution, provides a complete referendum for submitting to the voters of a school district the question, Shall said school district be allowed to become indebted in any manner, for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year? and the prior acts of the board of education leading up to the election called to settle said question are but preliminary to the exercise of such referendum, and are not subject to the general provisions of the Constitution on that subject and the laws of the state vitalizing the same.

4. SCHOOL AND SCHOOL DISTRICTS—Elections—Statutory Provisions. That part of section 1021, Comp. Laws 1909, which provides that elections on school questions shall "be held as above provided," refers to section 1018 of the same article, which provides, in substance, that the mayor in issuing his election proclamation shall set forth therein the proposition or propositions to be voted on at such election, the time of opening and closing the polls, and not to section 1002a of said article, which provides that "the polls shall be opened at six o'clock in the forenoon and kept open continuously until seven o'clock in the afternoon."

5. SCHOOLS AND SCHOOL DISTRICTS—Improvements by Cities in Indian Territory—Reimbursement. Where the cities of the Indian Territory erected and paid for improvements exclusively for school purposes prior to statehood, and the boards of education of the state, on the admission of the state, acquired the

same by operation of law, it is within the power of the Legislature to authorize the boards of education created under the laws of the state to reimburse such cities for such expenditure; but if bonds were issued by said cities to secure funds to pay for said improvements, said boards, being liable for the payment of such bonds, are without authority to reimburse such cities for such improvements.

(Syllabus by the Court.)

*Appeal from District Court, Carter County; S. H. Russell, Judge.*

Mandamus by the State, on the relation of I. R. Best, against the Board of Education of the City of Ardmore and others. From a judgment granting the writ, defendants appeal. Reversed and remanded.

*J. B. Moore* and *Johnson & McGill,* for plaintiffs in error. —Citing: *State ex rel. v. Scales,* 21 Okla. 683; 1 Abbott, Munic. Corp. secs. 5, 8; 3 Abbott, Munic. Corp. secs. 1067-1073; *School Dist. v. Zediker,* 4 Okla. 599; *Madden v. Lancaster County,* 65 Fed. 188; *Knowles v. Board of Education,* 31 Kan. 692; *State v. Ogan* (Ind.) 63 N. E. 227; *Water Supply Co. v. Albuquerque,* 9 N. M. 441; *Travelers Ins. Co. v. Township of Oswego,* 7 C. C. A. 669; *Hamilton County Com'rs v. Mighels,* 7 Ohio St. 110;   Cooley, Const. Lim. (7th Ed.) pp. 163, 165.

*W. A. Ledbetter* and *J. B. Perkins,* for defendant in error.— Citing *Horton v. School Com'r,* 43 Ala. 598.

KANE, J.  This was an action by the defendant in error, plaintiff below, against the board of education of the city of Ardmore, plaintiff in error, defendant below, for the purpose of compelling the president of said board and the treasurer and secretary thereof to cause to be prepared and executed certain municipal bonds voted for the purchase of a school site and the erection of a school building thereon, and to reimburse the city of Ardmore for money expended by it in the erection of school buildings in said city of Ardmore prior to statehood, and to deliver said bonds with interest coupons, and to do and perform all such acts and

things in the premises as by law is required. Upon final hearing a peremptory writ of mandamus was issued by the court below, to reverse which this proceeding in error was commenced.

It seems that at an election held on the 25th day of January, 1908, a board of eight freeholders was elected to prepare a charter for the city, and that a charter was prepared by this board and afterwards ratified by the qualified voters and approved by the Governor. Article 7 of said charter provides for a board of education for said city, naming the number of trustees who shall comprise such board, and the manner of electing them, and also provides for the appointment of a secretary and treasurer of said board by the members thereof. It further provides that the free public schools of said city shall be in charge of said board of education, and that said board of education shall constitute a body corporate, and the title to all public school lands and other property owned, controlled, set apart, or in any way dedicated to the use and benefit of the free public schools of said city, shall be vested in said board and their successors in office, in trust for the use and benefit of the public schools of said city, and such board shall have and exercise exclusive control and management over such school property. On the 27th day of April, 1909, an election was held, at which the five trustees, who by the terms of the charter comprised the board of education, were elected. On the 23rd day of March, 1909, said bonds for the purpose of constructing a high school building in the amount of $100,000, and $60,000 to reimburse the city for buildings constructed prior to statehood, were voted. The president of the board of education elected under the charter refused to sign and certify said bonds, and the treasurer appointed by said board failed and refused to countersign said bonds, and the secretary of said board failed and refused to attest said bonds by causing the corporate seal of said board to be attached thereto, as by the provisions of said charter they were required to do, whereupon an order was entered by the court below granting a peremptory writ of mandamus requiring

them to perform these alleged duties, to reverse which this pro-
ceeding in error was commenced.

The vital question is, Do section 3 of article 18 of the Con-
stitution, and section 801, Comp. Laws 1909, confer the power
upon cities containing a population of more than 2,000 to provide
by charter for the organization, maintenance, and control of a
public school system for such municipalities, when such provisions
are in conflict with the general state laws on said subject? The
part of section 3, *supra*, material to this inquiry, reads in sub-
stance as follows: Any city containing a population of more than
2,000 inhabitants may frame a charter for its own government,
consistent with and subject to the Constitution and laws of this
state. After the ratification of such charter by a majority of
the qualified electors of such city voting therefor it shall be sub-
mitted to the Governor for his approval, and the Governor shall
approve the same if it shall not be in conflict with the Constitu-
tion and laws of this state. Upon such approval it shall become
the organic law of such city, and supersede any existing charter
and all amendments thereof and all ordinances inconsistent with
it. Section 801, Comp. Laws 1909, provides that:

"When a charter for any city of this state shall have been
framed, adopted and approved according to the provisions of this
act, and any provisions of such charter shall be in conflict with
any law or laws relating to cities of the first class in force at the
time of the adoption and approval of such charter, the provisions
of such charter shall prevail and be in full force, notwithstanding
such conflict, and shall operate as a repeal or suspension of such
state law or laws to the extent of such conflict; and such state
law or laws shall not thereafter be operative in so far as they are
in conflict with such charter," etc.

The contention of counsel for plaintiffs in error is that said
section of the Constitution and act of the Legislature do not con-
fer on the city of Ardmore any authority to pass any laws by the
adoption of a charter or otherwise limiting the power conferred
upon the school district of said city by the general laws of the
state, and the board of education elected under such charter, and

Vol. 26—24

the treasurer appointed by such board, are not the legal officers of said school district, but that the legal officers of said school district are the members of the old board of education of said city of Ardmore who were elected and qualified under the general laws of the state.

In *Patsy Grennan, County Treasurer, et al. v. J. H. Carson et al.*, 25 Okla. 730, 107 Pac. 925, in discussing and comparing the powers and duties of cities of the first class and boards of education prior and subsequent to statehood, this court held that the laws in relation to the organization and maintenance of a free public school system in force in Oklahoma Territory prior to statehood were extended over and continued in force in the state, and further held that:

"It was the policy of the framers of the Constitution and the people when they adopted it, to separate these two departments of government. Under the laws in force in the territory of Oklahoma that were continued and put in force in the state, the duties of the officers of cities of the first class are confined to the care, management, and control of the city and its finances; matters pertaining to education are intrusted to another corporate body."

The organization and maintenance of a free public school system for the education of the children of cities containing a population of 2,000 or over ought to be a matter of as much general state concern as the education of the balance of the children of the state, and ordinarily this function of government is not delegated to such municipalities.

"In modern days it is not only considered a governmental function, but, also, and especially in the United States, an imperative governmental duty to provide for and maintain a system of public education. This is true not only because through education is the individual rendered better capable of rational and good government, but also because education adds to his economic efficiency." (3 Abbott on Municipal Corporations, § 1067, pp. 2378, 2379.)

That it was not the intention of the framers of the Constitution to intrust this important function of government to a minor political subdivision of the state is quite apparent from a casual

examination of the provisions of that instrument pertaining to this subject. Section 1 of article 13, entitled "Education," provides that: "The Legislature shall establish and maintain a system of free public schools," etc. Section 3 provides that: "Separate schools for white and colored children with like accommodation shall be provided by the Legislature, and impartially maintained," etc. Section 4 provides that: "The Legislature shall provide for the compulsory attendance at some public school, unless other means of education," etc. Section 6 provides that: "The Legislature shall provide for a uniform system of text books for the common schools of the state." And section 7 provides that: "The Legislature shall provide for the teaching of the elements of agriculture, horticulture, stock feeding, and domestic science in the common schools of the state." All of these commands are directed to the Legislature. The word "system" itself imports a unity of purpose as well as an entirety of operation, and the direction to the Legislature to "establish and maintain a system of free public schools" means one system, which shall be applicable to all the public schools within the state. *Kennedy v. Miller*, 97 Cal. 429, 32 Pac. 558. And the idea of unity of purpose and entirety of operation is emphasized and made more apparent by the other excerpts from the Constitution above quoted. Section 8, art. 11, of the California Constitution, provides that any city containing a population of more than 3,500 may frame a charter for its own government, consistent with and subject to the Constitution and laws of the state, etc.

The case of *Kennedy, City Treasurer, v. Miller, supra,* was an action by Kennedy, city treasurer of the city of San Diego, against Miller and another, as county treasurer and auditor, to obtain the custody of funds apportioned for school purposes. A charter of the city, adopted and approved in accordance with law, provided for a board of education, with certain designated powers and duties, and further provided for a public school fund for the city which shall be deposited with the city treasurer. The general laws of the state provided that every city forms a school district,

unless subdivided, etc., that the board of education shall be elected under the law governing such cities, and that their powers and duties shall be as prescribed by such laws, except as otherwise provided. Among the duties prescribed for such board is the duty to pay all moneys collected for school purposes into the county treasury. Kennedy alleged that as city treasurer he was entitled to the custody of certain moneys deposited with the county treasurer, and he sought by mandamus to compel the defendants, as auditor and treasurer of the county of San Diego, to deposit these moneys with him, as the treasurer of the city of San Diego. In discussing the question thus raised, Mr. Justice Harrison, who delivered the opinion of the court, used the following language:

"The provision in the charter of the city of San Diego that all moneys belonging to the school fund of the city shall be deposited with the city treasurer cannot, as we have seen, supersede the requirements of the political code that all moneys pertaining to the public school system shall be paid into the county treasury. * * * The Constitution has authorized the city to frame this charter 'for its own government,' and this limitation implies that its authority is restricted to its own officers, and the inhabitants within its territory, and that it cannot extend the authority of its officers to matters outside of its territory, or to subjects that have been placed by the Constitution exclusively within the control of the Legislature, or that have been confided by the Legislature to the management of other officials. * * * We hold, therefore, that the appellant is not entitled to the custody of the moneys referred to in his petition, and the judgment of the superior court is affirmed."

The general laws of California provide that boards of education shall be elected in cities under the provisions of the law governing such cities, and their powers and duties are as prescribed by such laws. Discussing this provision of the general laws of California in *Kennedy v. Miller, supra,* Mr. Justice Harrison says:

"It is unnecessary to determine whether it is competent for the Legislature to delegate to these boards of education any of the powers which the Constitution has authorized

it to exercise in providing for a system of common schools, as the rights of neither party herein depend upon the exercise of such power; but conceding that by virtue of this section of the political code the charter under which a city is organized may prescribe the powers and duties of a board of education, yet the 'powers and duties' authorized by section 1616 are powers and duties of the same general character as those which are enumerated in section 1617, and which, except in certain enumerated particulars, are conferred alike upon boards of education and boards of trustees. The powers and duties of the board of education in a city cannot trench upon the system that the Legislature has provided for the entire state, since the charter is limited in its operation by any general law that may be passed by the Legislature, and, in addition thereto, such powers and duties are, by the terms of the section in which they are authorized to be given, limited by the provisions of the political code."

In *Hancock v. Board of Education,* 140 Cal. 554, 74 Pac. 44, it was held that:

"Every city constitutes a separate school district, including such outlying territory as may be legally attached to it. Pol. Code, § 1576. The Santa Barbara school district was formed under the state law, and as there is nothing in the record to show that it has ever been changed, dissolved, or discontinued, it must be presumed that it still exists. A city charter adopted under the provisions of the Constitution has no effect whatever upon the existence or legal character of a school district formed under the general law. The school system is a matter of general concern, and not a municipal affair. *Kennedy v. Miller,* 97 Cal 434 [32 Pac. 558]."

The case of *Los Angeles City School Dist. v. Longden,* 148 Cal. 380, 83 Pac. 246, was an original application to the Supreme Court of California for a writ of mandate, growing out of the following facts: The Los Angeles city school district of Los Angeles county comprises for its territory the city of Los Angeles and certain contiguous outlying lands. Its governing body is the board of trustees of the Los Angeles city school district of Los Angeles county, whose members are the same as those of the board of education of the city of Los Angeles. This board of trustees, in compliance with the provisions of sec-

tion 1880 *et seq.* of the political code, initiated proceedings for the issuance of bonds of the school district, which proceedings were regularly carried to the point where the board of trustees certified to the board of supervisors of the county its action in the premises as provided by section 1884 of the political code. The board of supervisors refused to issue the bonds, as required by said section 1884, upon the ground that the city of Los Angeles, as a municipal corporation, has, under its charter and the laws of the state, the sole and exclusive right to issue bonds for the purposes specified. In discussing the questions thus raised, Mr. Justice Henshaw, who delivered the opinion for the court, says:

"Upon this proposition the contention of respondent is that all matters touching schools within the corporate limits of a city are 'municipal affairs,' and that as, under the provisions of section 6 of article 11 of the Constitution, the charter of a city is supreme in municipal affairs, the charter of Los Angeles thus becomes the sole guide, authority, and power for the issuance of school bonds; that the charter of Los Angeles denies the power to its board of education to take the initiatory steps towards the issuance of school bonds, and confers that power upon its city council; and that its city council, under the provisions of section 78 of the charter, draws its power from the provisions of the general improvement act of 1901. Herein reliance is placed upon the language of this court in the case of *Law v. San Francisco,* 144 Cal. 384, 77 Pac. 1014. There this court had under consideration the question of the power of the municipality to issue bonds for the erection of new schoolhouses and the improvements of existing schoolhouses, and the case of *In re Wetmore,* 99 Cal. 151, 33 Pac. 769, was cited and quoted from, to the effect that, as schoolhouses are essential aids in the promotion of education, their erection is but incidental to the maintenance of the schools, and falls as completely within the functions of a municipal government as does the erection of a hospital for the indigent poor, or buildings for its fire engines. It thus may be taken as decided and settled that a city, as such, may bond itself for public school purposes, and that this power extends to all cases where the object is in furtherance, and not in derogation of, or in conflict with, the general school system established by the state. For in this connection it must be remembered, as was said in *Hancock    v.*

*Board of Education,* 140 Cal. 554, 74 Pac. 44, that the school system of the state is a matter of general concern, and not a municipal affair. It may be well to dwell upon this distinction with more particularity, and in so doing to point out the well-recognized and oft-repeated difference between the acts of the city as a city, and the acts of the school district, which may comprise the same territory. They are essentially the acts of two different corporate entities—the powers of the city being drawn from its charter, the powers of the school district being derived from the provisions of the political code; the bonds which the city issues being municipal bonds of that city, and the power to issue them being derived from the charter taken with the general laws, while the bonds of the school district are, in name and in fact, school district bonds, the right and power to issue them being derived from the political code. What, therefore, the Wetmore Case and the Law Case decided was that the erection of schoolhouses within the corporate limits of a municipality was justly to be regarded as a municipal affair, and that the city, therefore, as such, could create a bonded indebtedness for such like purposes, even though power to do the same thing was, under the general school system of the state, vested in a school district, which, while occupying the same territory as that of the city, was still in point of law a distinct corporate entity. It follows, therefore, that the declaration of this court that the issuing of bonds for the building of schoolhouses by a city is a municipal affair constitutes in no sense a negation of the fact that another corporate entity—the school district—may, under the general school system of the state, do the same thing for the same purpose. Moreover, it should be finally emphasized that the power of a municipality in this regard can only run current with, and never counter to, the general laws of the state touching the common school system. To such general laws, if conflict arises, all municipal charters must be subservient."

As the Legislature of this state did not see fit to confer on cities of the class entitled to frame charters for their own government any power to legislate on matters pertaining to the public school system of the state, it follows that the attempt on the part of the city of Ardmore by its charter to vest such authority in another board than that provided by the general law must fail.

The propositions heretofore discussed do not affect the validity

of the bonds, as they were voted under the provisions of the general laws in force before the charter of the city was adopted and approved. Counsel for plaintiffs in error contend, however, that the bonds were illegally issued: (1) Because the resolution of the board of education requesting said election was subject to the provisions of the law providing for the initiative and referendum, and was acted upon by the mayor before the expiration of 30 days after its adoption, and therefore said election was a nullity; (2) that the resolution passed by the board of education, directing the plaintiffs in error to execute said bonds is also subject to said provisions for the initiative and referendum, and did not become effective and valid until 30 days after its passage; (3) because the polls were not opened and closed as provided by law; (4) that the board of education of the school district of the city of Ardmore had no authority to issue $60,000 refunding bonds to reimburse the city of Ardmore for money advanced by said city to construct school buildings prior to statehood.

The resolution of the board of education and the request for an election which, it is contended, are subject to the referendum appear upon the records of the board as follows:

"To the Hon. J. R. Pennington, Mayor of the City of Ardmore, Oklahoma: The following action was taken by the school district of Ardmore, January 21, 1909, relative to the issuance of bonds: Upon motion made by T. L. Smith seconded by A. C. Young, that the mayor of the city of Ardmore be requested to call an election of the qualified voters of the school district of Ardmore, Oklahoma, at as early date as practicable, submitting to the said voters the question whether or not bonds be issued in the amount of one hundred thousand ($100,000) dollars for the purpose of purchasing site and erecting a high school building thereon. Also submitting to the qualified voters of said district the question whether or not said district shall issue bonds in the sum of sixty thousand ($60,000) dollars for the purpose of reimbursing the city of Ardmore said amount expended by said city in the erection of the school buildings in the four wards in the school district of Ardmore. The motion was put and carried by a unanimous vote of the board. Yeas, 6; nays, none."

Whether such proceedings are subject to the general initiative or referendum provisions of the Constitution must be determined from an examination of all the provisions of the Constitution relating to this subject. Section 1 of article 3 provides that:

"The qualified electors of the state shall be male citizens of the United States, male citizens of the state, and male persons of Indian descent native of the United States, who are over the age of twenty-one years, who have resided in the state one year, in the county six months, and in the election precinct thirty days, next preceding the election at which any such elector offers to vote," etc.

By section 1, art. 5, the people reserve to themselves the power to propose laws and amend the Constitution and to enact or reject the same at the polls, independent of the Legislature, and also reserve the power, at their own option to approve or reject at the polls an act of the Legislature. Section 2 provides that the first power reserved is the initiative, and the second, the referendum. These powers are specifically reserved to legal voters. By section 5 the powers of the initiative and referendum reserved to the people of the state are further reserved "to the legal voters for every county and district therein as to all local legislation or action in the administration of county and district government in their respective counties and districts." Section 3, among other things, provides that: "The Legislature shall make suitable provisions for carrying into effect the provisions of this article." In pursuance of this constitutional direction the Legislature enacted section 3691, Comp. Laws 1909, which provides in substance that no ordinance or resolution of a municipal legislature shall become operative until 30 days after its passage and approval by the executive officer unless the same shall be passed over his veto and in that case it shall not take effect and become operative until 30 days after such final passage except measures necessary for the immediate preservation of the peace, health, or safety; and no such emergency measure shall become immediately operative unless it shall state in a separate section the reasons why it is necessary that it should become immediately operative, and the question of emer-

gency shall be ruled upon separately and be approved by the affirmative vote of three-fourths of all the members elected to the city council taken by ayes and noes, and the whole measure be approved by the executive officer.

It is contended by counsel for plaintiff in error that this act of the Legislature vitalized the initiative and referendum provisions of the Constitution applicable to school districts, and, the emergency clause not having been attached to the resolution of the school board requesting an election, no action thereon calling an election should have been taken until 30 days after the adoption thereof and therefore the proclamation of the mayor calling said election within 30 days was void and of no effect, and the election held thereunder a nullity. With this view of the law we cannot agree. Section 1021, Comp. Laws 1909, provides that:

"All elections for voting on the question for authorizing the board of education of any city of the first class to issue bonds shall be called by the mayor of such city upon request of the board of education thereof," etc.

It was under this section of the statute that the board requested the mayor to call the election. Before the request for an election was made it was incumbent on the board to determine the necessity for the creation of bonded indebtedness for the purposes in contemplation, and that the financial affairs of the district were in such a condition as to make it necessary under the law to submit the question of creating the debt to the voters of the district. If the indebtedness to be created is in "an amount exceeding in any year, the income and revenue provided for such year," section 26 of article 10 of the Constitution must be followed, which provides that:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner for any purpose, to an amount exceeding in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to

an amount including existing indebtedness in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness: Provided, that any county, city, town, township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

In our opinion the foregoing section of the Constitution was intended to provide a specific referendum upon the question of the creation of debts by school districts to an amount exceeding in one year the income and revenue provided for such year, and the prior acts of the board of education leading up to the election are but preliminary to the exercise of the power of the referendum. The provisions of this section constitute an exception to the other provisions of the Constitution providing generally for the reservation of the power of the referendum to districts and the special provisions thereof apply particularly to the special subject-matter therein contained and take such special matters out of the general provisions of the Constitution. Every purpose of the reservation of the power of the referendum, so far as the voters of school districts are concerned, will be safeguarded by this construction. The main question is: Shall the school district become indebted in the amount and for the purposes mentioned in the call? And this question must be answered by the voters themselves, no matter what the judgment of the board of education may have been. We can think of no good reason for delaying the submission of this question for 30 days after the school board's decision that there was a necessity for the expenditure. The 30-day requirement of the statute has no application to such preliminary proceedings, either before or after the submission of the primary question to the voters for their approval or rejection. *Carlson v. City of*

*Helena,* 39 Mont. 82, 102 Pac. 39. This form of referendum is more favorable to the taxpayer than the referendum prescribed by the general law on the subject, as it requires the assent of three fifths of the voters voting at such elections to carry the proposition presented, whereas, a measure referred under the general law becomes effective when it has been approved by a majority of the votes cast thereon.

Section 1021, art. 20, Comp. Laws 1909, provides that:

"All elections for voting on the question of authorizing the board of education of any city of the first class to issue bonds shall be called by the mayor of such city upon the request of the board of education thereof, and be held as above provided."

Section 1002a of the same article provides that:

"All elections held in accordance herewith shall be conducted at the regular voting places or polls used within such cities, towns, and villages at general state elections and in cities of the first class the polls shall be opened at six o'clock in the forenoon and kept open continuously until seven o'clock in the afternoon, and in other towns, the polls shall be open at 8 o'clock in the forenoon and close at 6 o'clock in the afternoon."

And section 1018 provides that the mayor, in issuing his proclamation, shall set forth therein the time of opening and closing the polls. It is admitted that at the election at which the bonds were voted the polls were not opened and closed at the times required in the foregoing statute. The same question presented by the foregoing situation was presented to this court in relation to municipal bonds in *City of Ardmore et al. v. State ex rel. Best,* 24 Okla. 862, 104 Pac. 913. In delivering the opinion of the court in that case Mr. Justice Hayes said:

"The polls were not opened until 8 o'clock in the forenoon. The general election statute requires that the polls, at any election in cities of the first class for the election of state and county officers, shall be opened at 6 o'clock in the forenoon, and kept open until 7 o'clock in the afternoon (section 1, art. 6, c. 31, p. 343, Sess. Laws 1907-08), and at elections in cities of the first class of municipal officers the polls must open at 8 o'clock in the forenoon and close at 7 o'clock in the afternoon (section 2, art. 1, c. 16, p.

264, Sess. Laws 1909). But section 1, art. 4, of the act of the Legislature approved March 13, 1909 (Sess. Laws 1909, p. 268, c. 16), provides that the mayor of a city of the first class,. in calling elections to determine whether bonds shall be issued, shall set forth in the proclamation published by him the time of opening and closing the polls, the number and location of the polling places, the names of the officers who shall conduct the election, and said section specifies what election officers shall be appointed. This section of the statute which was in force at the time the election in the case at bar was held contemplates that the mayor shall, in the proclamation published by him, give notice of the election and fix the time of opening and closing the polls, and the number and location of the polling places. The proclamation published by the mayor after the ordinance became effective fixed the hour of opening the polls at 8 o'clock in the forenoon and the hour of closing them at 6 o'clock in the afternoon. The polls were opened and closed at those hours."

In the instant case the election was called by the same proclamation under discussion above, the only difference between it and the case quoted from being that in that case the bonds involved were city, whilst in this they are school district bonds. It seems to us that that part of section 1021, *supra*, which provides that elections on school questions "shall be held as above provided," refers to section 1018 of the same article, which provides, in substance, that the mayor, in issuing his election proclamation, shall set forth therein the proposition or propositions to be voted on at such election, the time of opening and closing the polls, the number and location of the polling places, the names of the officers who shall conduct the ·election, etc., and not to section 1002a, *supra*, which is applicable to general municipal elections. This view is made more clear by the further directions to the mayor contained in section 8030, Comp. Laws 1909, wherein he is required to name in his election proclamation the amount of the bonds to be voted on and the purposes for which they are to be voted and cause to be published in a newspaper of general circulation published in the same district the time and place of such election, such notice to be given at least 10 days before such elec-

tion.    Thus construing the sections of the statute under discussion, the case of *City of Ardmore et al. v. State ex rel. Best, supra,* is in point, and decisive of the third question raised by counsel.

The remaining question involves the right of the board of education of the school district of Ardmore to issue $60,000 in refunding bonds to reimburse the city of Ardmore for moneys advanced by said city to construct school buildings prior to statehood.    In *Patsy Grennan, County Treasurer, et al. v. J. H. Carson, et al., supra,* it was held that upon admission of the state into the Union the boards of education of the state became liable for the bonded indebtedness incurred by the cities of the Indian Territory for school purposes prior to statehood, upon the transfer to said board, without consideration, of the public property acquired by the expenditure of the funds derived from the sale of the bonds. If such cities erected and paid for improvements of this class exclusively for school purposes prior to statehood and the boards of education of the state upon admission acquired the same by operation of law, it is within the power of the Legislature to authorize the boards of education created under the laws of the state to reimburse such cities for such expenditure.    But if bonds were issued by such cities to secure funds to pay for said improvements, it would be illegal as well as poor business judgment for the boards of education of the state to undertake to pay such bonds and reimburse the city for the improvements also.

The judgment of the court below is reversed, and the cause remanded, with directions to take such further action not inconsistent with this opinion as may be necessary.

All the Justices concur.