## Case No. 13,505.
### STOUTZ v. BROWN et al.
[5 Dill. 445.] [1]
Circuit Court, D. Nebraska. 1879.

TAXATION—SCHOOL LANDS—TAX DEEDS.

School lands held by the state of Alabama under the act of congress of June 22, 1854 (10 Stat. 299), situate within the state of Nebraska, are not taxable by the authority of the latter state.

This suit [by Fred. A. Stoutz against James E. Brown and John Finley] is brought to quiet title and to remove a cloud created by certain taxes and tax-deeds upon a portion of the lands lying in Otoe county, Nebraska, which are known as the "Alabama School Lands." By act of congress of June 22d, 1854, certain school districts in the state of Alabama were allowed to select from the government lands certain tracts in lieu of sections 16 and 36 in a certain district of Alabama, otherwise disposed of by the government. In accordance with said act, certain lands in Nebraska were so selected. In February, 1870, the state of Alabama conveyed said lands to one George F. Harrington, through whom complainant derives his title. The defendants originally claimed title under sundry tax-deeds; but having withdrawn their claim of title, they now rely upon their tax receipts, tax certificates, and tax-deeds as evidence of their right to be treated as assignees of the amount of the taxes levied and paid on the property and subrogated to the rights of the state and county in this regard. The taxes claimed by the defendants are of two classes: 1st. Those levied between 1860 and 1870. 2d. Those levied after 1870. The plaintiff offers to pay the defendants the amounts paid out by them for taxes levied after 1870, and twelve per cent interest from date of payment and costs of suit. As to the taxes prior to 1870, the plaintiff claims that the lands were not taxable by the state of Nebraska, because they were the property of the state of Alabama, and formed part of the school lands and fund of that state. On the other hand, the defendants insist that the state of Alabama cannot legally take, hold, or transfer realty within the limits of Nebraska, but if it can, they further insist that the lands are taxable in the same manner as if owned by private individuals. Issues have been made up, the proofs taken, and the cause is now on final hearing.

G. W. Covell and S. H. Calhoun, for plaintiff.

E. F. Warren and J. L. Mitchell, for defendants.

DILLON, Circuit Judge. Congress, in providing for the admission of Alabama into the Union, in 1819 [3 Stat. 489], made the usual grant of the 16th section, or, if sold or dis-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

posed of, then other lands equivalent thereto and most contiguous to the same; for the use of schools (3 Stat. 400, § 6). In 1836 (5 Stat. 116), provision was made by congress for carrying into effect in that state the existing compacts in regard to schools. In 1845, this last-named act was amended (5 Stat. 727). On June 22d, 1854, the state having lost the benefit of certain of the school lands by reason of a different disposition thereof by treaty with certain Indian tribes, congress passed an indemnity act authorizing the state authorities of Alabama "to select, by legal subdivisions, from any of the surveyed public lands," the requisite quantity; "which selections, upon being approved by the secretary of the interior, shall be holden by the same tenure, and upon the same terms, for the support of schools in such townships, as the sections numbered sixteen, within the said reservation would have been, had not treaty stipulation made other disposition thereof." 10 Stat. 299.

Under this act, selections were made by authority of the state in September, 1858, of lands lying in the then territory of Nebraska. These selections were approved by the secretary of the interior in December, 1859. The state of Alabama provided for the sale of these lands by an act approved February 23, 1860, amended December 29, 1868. The lands were sold by the state to one Harrington (under whom plaintiff derives title), October 5th, 1869, and duly conveyed to him February 24th, 1870.

After the selection and approval of these lands to the state of Alabama, viz., April 19th, 1864, congress authorized the people of Nebraska to form a constitution, with the usual provisions in respect of the public lands (13 Stat. 47), and the state was subsequently admitted into the Union.

From 1860 to 1870, the territory, and after its admission the state, of Nebraska, assessed these lands owned by the state of Alabama for taxation, the same as if they had been owned by private individuals. The plaintiff claims that Nebraska had no authority to tax these lands while owned for school purposes by the state of Alabama. On the other hand, the defendants claim that the state of Alabama had no authority of law to hold lands within the limits of the state of Nebraska. As the title of the state of Alabama to these lands was perfect when Nebraska was a territory, and was derived immediately from congress, there is no solid ground for the defendants' claim in this respect.

It is a somewhat more difficult question whether these lands while owned by Alabama were exempt from taxation by the territorial and state authorities of Nebraska. No act of congress declares such exemption. On the other hand, no act of congress or of the territorial or state legislature has expressly declared that they were taxable.

But since these lands were granted for schools—were in lieu of those first given for this purpose—and were to be "holden by the same tenure and upon the same terms" as those originally granted, and since the title of the state of Alabama was derived immediately from congress, and became perfect during the territorial status of Nebraska, it seems to my mind reasonably plain that it was not intended that they should be subject to local taxation while held by Alabama for the purposes of the grant. If the lands had been in Alabama, where it was originally intended they should be, they would not, while remaining unsold, have been taxable by that state. Congress, in order to keep its compact with the state, granted, in the place of lands it had lost, other lands situate within the territory of Nebraska, but upon the same trusts. Congress was the supreme legislative power in the territory where these substituted lands were situated, and it can hardly be supposed that congress, to which we must attribute both the intention and purpose to deal justly, designed to subject these lands, or allow them to be subjected, while held by the state, to local taxation.

The special facts of this case do not involve the broad question argued by counsel as to the right of one state to own lands within another, or the further question, if a state can thus own lands, whether they are impliedly subject to the revenue laws of the state in which they are situate. Under the circumstances, these lands were held for public uses to the same extent as if they were within the state of Alabama. There is no express adjudication on the point here decided, but the analogies of the law support the conclusion we have reached. Dill. Mun. Corp. § 614; Cooley, Tax'n, 57, 58; Railroad Co. v. Penniston, 18 Wall. [85 U. S.] 30.

All taxes, therefore, levied on these lands prior to 1870, are void. As to those levied afterwards, the stipulations and offers of the respective parties reduce the controversy to narrow limits. The defendants, while relying on their tax certificates and tax-deeds as evidence of their rights, disclaim all title. The plaintiff offers to pay all taxes assessed after 1870, with twelve per cent interest. The defendants claim forty per cent (the statutory rate) for two years, and twelve per cent (the legal rate of interest) afterwards.

The plaintiff asks affirmative relief. The principles enunciated this term, in the case of Craig v. Pollock [Case No. 3,335], apply. The lands were taxable after 1870. No illegal valuation is shown. The irregularities relied on by the defendants were harmless. The taxes were not paid. They were tendered for the year 1875.

The plaintiff may either dismiss his bill or submit to a decree to pay the amount of taxes actually paid by the defendants since 1870, with forty per cent for two years and twelve per cent thereafter, except for the year 1875, for which the rate will be twelve per cent. Ordered accordingly.