CLAYBROOK and others *v.* CITY OF OWENSBORO and others.

*(Circuit Court, D. Kentucky.   March 8, 1884.)*

1. CONSTITUTIONAL LAW—ACT DISCRIMINATING BETWEEN WHITE AND BLACK IN DISTRIBUTION OF SCHOOL-FUND VOID.
   Former opinion, 16 FED. REP, 297, adhered to.
2. SAME—MANDATORY INJUNCTION.
   The United States circuit court for the district of Kentucky has no power to issue a mandatory injunction requiring a distribution of the money raised from taxation for public schools, under the acts of the Kentucky legislature passed in 1881, as there is no authority in said act for such distribution, and complainants have no contract which the court can enforce by affirmative relief.

In Equity.

*Bagby & Marshall,* for complainants.
*Sweeney, Owen & Ellis,* for defendants.

BARR, J. This case is before me on the merits, and after a careful consideration of the arguments presented by the learned counsel representing the defendants, I see no reason to change the views expressed in the opinion filed when the temporary injunction was granted. The schools organized and sustained in Owensboro, under the act of 1871 and its amendments, are in fact and in law part of the common-school system of this state. They may be called "public schools," but this makes no difference. These schools are common alike to all white children of school age, and are sustained by taxation. Taxation to sustain schools is permitted because the education of the children of a state is a recognized governmental purpose. If the state can constitutionally exclude colored children from all benefits arising from this tax, levied as it is for a governmental purpose, because white people pay the tax, there is no good reason why the state may not limit and distribute the benefit of government in every respect according to race or color, and in proportion to the taxes paid by each race or color. This discrimination in the benefit of the taxes raised under the act of 1871 is, I think, denying colored children of Owensboro the equal protection of the law, and within the inhibition of the fourteenth amendment to the federal constitution.

The affidavits which were before me when the temporary injunction was granted, proved that there were about 500 colored children of the school age, and about 800 white children of that age, in the city of Owensboro; but the depositions now in the record show that this was a mistake. The evidence now in would indicate there was in 1882 one colored child of the school age in said city to three white children of that age; hence, if the funds arising from taxes, raised under both the act of 1871 and the act of 1881, were distributed between the colored and white children of the school age, it would be about one dollar to the colored schools to every three dollars to the white schools. If this court had the power to issue a mandatory injunction requiring a distribution of the money raised from this tax, it should take into consideration the sums received by the colored schools under the act of 1881. But after a careful consideration of the question I cannot satisfy myself that the court has authority in this action to order the payment of any part of the money raised by and under the act of 1871 to complainants, or to the trustees of the colored schools of Owensboro. The difficulty in the way of granting such affirmative relief is that there is no legislative enactment authorizing such a use of any part of the money raised under this act, neither have the complainants, or those they represent, any contract right which this court can enforce in this action by affirmative relief.

It may be that the entire act of 1871, and amendments, is unconstitutional,—a question not now decided. But if it be assumed that the state can constitutionally levy the same rate of tax upon colored

and white people by separate and distinct acts, as has been done under the acts of 1871 and 1881, and 'that the only objection to the act of 1871 is that the benefits arising from the taxes raised are confined to the white race, and that the other parts of this act remain in full force, how is this court to administer this fund without legislative authority, or contract right? It is, however, the right, as well as the duty, of this court to declare a legislative enactment unconstitutional if it be unconstitutional, and, in a proper case, enjoin persons from acting under the authority of such an act.

The bill prays that on final hearing the defendants be adjudged and decreed to distribute the taxes, arising from this levy for school purposes, under the act of 1871, in accordance with law and equity, and for all proper relief in the mean time; and for a restraining order, preventing the payment out of any money raised under this law for school purposes. The temporary injunction restrained the city of Owensboro from paying out a certain proportion (5-13th) of the money raised for school purposes under this law, upon the idea that this would fully protect any right complainants might sustain upon final hearing; and I understand from the manner which the case has been prepared and argued by counsel representing complainants that if complainants cannot get from this court an affirmative order distributing to the colored schools of Owensboro a part of this fund, they do not desire an injunction prohibiting the payment of all of the money raised under the act of 1871, but only such a proportion as would cover the proportion which the colored school would receive were there a division according to the number of children of school age. If I am correct in this, complainants may have a decree enjoining and restraining the proper parties from applying to the use of the schools organized for and at which white children only are allowed to attend one-fourth of the money heretofore, or which may be hereafter, collected under the authority of the act of 1871 and its amendments. This decree will not apply to money raised and paid out prior to the temporary injunction, and will leave undisturbed the other three-fourths of the money raised under said act. If, however, counsel for complainants think they are entitled and desire an injunction restraining the collection or payment of any taxes under this act of 1871, they must give notice to the opposite counsel, and I will hear an argument upon this question either by brief or orally, or both, as either counsel may wish.

See *U. S.* v. *Buntin*, 10 FED. REP. 730 and note, 737.—[ED.