## INDIAN TERRITORY ILLUMINATING OIL COMPANY *v.* STATE OF OKLAHOMA.

### ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 283. Argued March 14, 1916.—Decided April 3, 1916.

A tax upon a lease made is a tax upon the power to make the lease.

Leases that cannot be taxed as an entity cannot be taxed vicariously by taxing the stock of the corporation owning them where the only value of the stock is the value of the leases.

Oil leases of land in Oklahoma made by the Osage tribe of Indians under authority of the Acts of February 28, 1891, and March 3, 1905, are under the protection of the Federal Government, and the lessee is a Federal instrumentality, and the State cannot, therefore, tax its interest in the leases either directly, or as the leases are represented by the capital stock of the corporation owning them. *Choctaw & Gulf R. R. v. Harrison,* 235 U. S. 292.

43 Oklahoma, 307, reversed.

THE facts, which involve the right of the State of Oklahoma to tax leases made by the Osage Tribe of Indians of lands in that State made under authority of acts of Congress, are stated in the opinion.

*Mr. Preston C. West,* with whom *Mr. John H. Brennan* was on the brief, for plaintiff in error.

*Mr. S. P. Freeling,* Attorney General of the State of Oklahoma, *Mr. John B. Harrison* and *Mr. J. H. Miley* for defendants in error, submitted.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The question in the case is whether a certain assignment of a lease and rights thereunder made by the Osage Tribe

of Indians, which lease conferred the privilege of prospecting, drilling wells and mining and producing petroleum and natural gas upon lands in Oklahoma Territory, are subject to a tax assessed under the laws of Oklahoma as the property of plaintiff in error in its capacity of a public service corporation.[1]

Plaintiff in error, herein designated as the oil company, is assignee of the lease and asserts the negative of the question, contending that under the lease and the assignment of the lease it became "a Federal agent, acting under a Federal appointment and authorization, in the development of lands belonging to the Osage Tribe of Indians in the Osage Reservation, and that its business, license or permit as such cannot be taxed by the state government, although its physical properties are always subject to taxation." It rests its contention upon an act of Congress of February 28, 1891 (c. 383, 26 Stat. 794–5), and an act of Congress of March 3, 1905 (c. 1479, 33 Stat. 1048, 1061), which extended the lease to the extent of such portion of the lands as had been sub-leased, namely, 680,000 acres.

By the act of 1891 it was provided, "That where lands are occupied by Indians who have bought and paid for the same, and which lands are not needed for farming or agricultural purposes, and are not desired for individual allotments, the same may be leased by the authority of

---

[1] It is provided by § 7338, Revised Laws of 1910, that "every public service corporation organized, existing or doing business in this State shall on or before the last day of February of each year return sworn lists or schedules of its taxable property as hereinafter provided, or as may be required by the state board of equalization, and such property shall be listed with reference to amount, kind and value on the first day of February of the year in which it is listed; and said property shall be subject to taxation for state, county, municipal, public school and other purposes, to the same extent as the real and personal property of private persons."

the council speaking for such Indians, for a period not to exceed five years for grazing, or ten years for mining purposes in such quantities and upon such terms and conditions as the agent in charge of such reservation may recommend, subject to the approval of the Secretary of the Interior."

The act of 1905 recognized the oil company as the owner by assignment of the lease, which assignment was approved by the Secretary of the Interior, and extended the lease for a period of ten years from March 16, 1906, with all the conditions of the original lease except that from and after that date the royalty to be paid on gas should be $100 per annum on each gas well instead of $50, as provided in the lease, and except that the President of the United States should determine the amount of royalty to be paid to all.

The State opposes the contentions of the oil company and asserts that the lease was "not a grant of any authority, franchise, or privilege to any particular person or corporation, and is merely a permit to the Osage Tribe, authorizing such tribe to lease to any person or any number of persons upon the approval of such lease contract by the Secretary of the Interior." It further asserts that the oil company merely occupied "the position of an independent contractor, acting for itself and in its own behalf, in a contract with the Osage Indian Tribe" and that therefore the relation of principal and agent between it and the Government did not exist.

A statement of the case is as follows: The oil company made a sworn return of what it considered the fair cash value of that part of its property engaged in the public service at $53,835.10. The State Board of Equalization, after a hearing, increased the valuation to $538,350.00, the basis of the order of the board being that the oil company was not protected from taxation by the lease from the Indians. Under the procedure of the State the

oil company appealed from that order to the Supreme Court of the State.

In the latter court a referee was appointed to take testimony and report his findings of fact and conclusions of law. He duly reported the facts and from them also reported as a conclusion of law that the oil company was "liable to taxation by the State of Oklahoma for the full value of its property, tangible and intangible—that is, for the sum of $500,000"; and that it was "not exempt from taxation upon the theory that it is a Federal agent or that it holds a franchise from the Federal Government." And he recommended that judgment be entered fixing the assessment of the oil company's property for taxation for the year 1911 at $447,169.98, this being the difference between the total value of all the property and the amount ($52,830.02) locally assessed.

The report was confirmed, the court adjudging that the property of the oil company be assessed as recommended by the referee.

The question in the case seems to be a simple one. It is given some complexity by the opinions of the court on the hearing and rehearing, which require some reconciliation. It appears from the findings of the referee that on March 16, 1896, the Osage Nation of Indians in Oklahoma Territory entered into a contract with one Edwin B. Foster, by the terms of which Foster had a blanket lease upon the Osage Indian reservation for the sole purpose of prospecting and drilling wells and mining and producing petroleum and natural gas only. The lease was for a term of ten years and was approved by the Secretary of the Interior. By an act passed March 3, 1905, Congress extended the lease as to 680,000 acres for ten years. The lease has therefore expired. Prior to its extension in 1905 the lease was assigned to the oil company.

The oil company has sub-let to more than one hundred persons and corporations and the operations upon most

of the lands covered by the lease have been and are conducted by sub-lessees. A small portion, the amount not appearing, is operated by the company.

By the terms of the lease as extended the sub-lessees are required to pay a royalty of 1/6 of the oil produced upon the property, of which 1/24 goes to the company and 3/24 to the Indians, the payments on behalf of the latter being made to the Indian Agency under and by virtue of the rules and regulations of the Department of the Interior.

The oil company has laid pipe lines upon the leased lands for conveying natural gas and it has been its practice to furnish gas to the sub-lessees for use as fuel for their drilling and pumping operations at a flat rate, the amount of which is not disclosed. The company also furnished gas during 1911 for domestic consumption to the residents of Bigheart and Avant, two small towns in which it had no franchise, in the Osage Nation adjacent to the pipe lines of the company. It also furnished gas to a local corporation in the city of Bartlesville, which company held a franchise for and was engaged in the business of selling gas to the residents of that city and also to a local distributing company at the town of Ochelata for use in the business of the latter company in selling gas to the inhabitants of that town.

By the terms of the contract with the Osage Indians the company was required to furnish gas free to the Osage citizens for use in the public institutions of the Osages under certain conditions named.

The oil company is primarily engaged in the business of oil production and its operations in the gas business are conducted as an incident to the development of the oil territory and the production of oil, and, to some extent, as a matter of accommodation to the citizens of Bigheart and Avant, and other persons residing along the company's pipe lines.

In 1911 the company made a sworn return of $53,835.10 as the actual cash value of that part of its property engaged in the public service by reason of the gas business transacted by the company. This valuation was raised by the Board of Equalization to $538,350.00. Certain of the company's property was returned to local assessors and assessed at $52,830.02. All of its property is situated in Osage and Washington counties, Oklahoma, and the total value of its stock, including all its property, tangible and intangible, on February 1, 1911, was $500,000.

The property returned to the Board of Equalization and to the local assessors did not include the lease, sub-leases, contracts and franchises of the company, but only its physical property, it being contended by the company that such lease, sub-leases, contracts and franchises were not subject to taxation.

The total value of the company's property of every kind located in Oklahoma over and above the amount locally assessed was $447,169.98 on February 1, 1911.

The gas business of the company has not been profitable but has been and is valuable as an adjunct to its oil operations.

Against the confirmation of the report of the referee the court said that the oil company made four contentions: (1) That it was not a public service corporation and that the Board of Equalization was without authority to assess its property. (2) That its oil and gas leases were not property used in any public service rendered by it. (3) That the leases were not subject to taxation in the hands of the lessee or his assigns. (4) That in exercising rights under the laws and by the act of Congress extending the lease the oil company was a Federal agency, or exercised a privilege or franchise granted by the Federal Government, and that the lease, therefore, was not subject to taxation.

The court held, (1) that the company was a public service corporation; (2) that the Board of Equalization

had the power to assess to the company other property than that used in connection with public service; (3) that the oil and gas lease was property and must be assessed in the name of the owner of the lease and not in the name of the lessor; and (4) that by reason of the act of Congress of 1905 the gas, oil and other minerals under the lands remained the property of the Osage Tribe, and that the power of Congress over the property could not be questioned. And, distinguishing between the property of a Federal agent and the operations of such agent, it was held "that the tax sought to be levied was not invalid because sought to be levied upon a Federal agency or upon a franchise granted by the Federal Government; or because it interferes with the power of Congress to regulate commerce between the Indian Tribes."

On rehearing the court modified or changed its view. The changes and the reasons for them are not easy to represent. In the first opinion the report of the referee was confirmed and it was adjudged "that the property of appellant [oil company] be assessed as recommended by the referee in his report." In the second opinion the report of the referee is again confirmed and the estimate of the property of the company at $500,000 held to be sustained by the testimony taken by the referee; but the reasoning of the opinions is quite different. For a statement of the difference we may adopt for convenience that of the Attorney General of the State. He says, " . . . the essential difference between the original opinion and the opinion on rehearing being that in the original opinion it was held that oil and gas leases, as such, constitute property as defined by the Constitution and statutes of the State of Oklahoma, and as such was subject to taxation by said State, while the opinion on rehearing held that oil and gas leases, as such, were not defined as personal property subject to taxation under the statutes of Oklahoma, nor by the Constitution of said State, and, therefore, could not

be taxed as personal property; but that under the statutes the market value of the capital stock of said corporation could be taken into consideration by the State Board of Equalization in assessing the properties of said company and could be properly considered as an element of value in assessing said properties, and that the evidence taken before the referee as to the amount of the capital stock of said company and the market value thereof, together with its tangible assets, was sufficient to sustain the assessment made by the State Board of Equalization."

It is clear that the Board of Equalization and the referee sustaining its action proceeded upon the consideration that the leases constituted taxable property and the first opinion of the court confirming the report of the referee had its basis in the same consideration. That consideration was regarded as untenable in the second opinion but the court adhered to its former conclusion, that is, that the report of the referee should be confirmed. The Board of Equalization, the referee, and the court in its first opinion, regarded the leases as taxable entities. In the second opinion it was held that they could not be so regarded under the constitution of the State, but the court gave them effective representation in the capital stock of the company and the latter then was taken as evidence that the value of the property of the oil company was $500,000. Whether the constitution of the State permits this accommodation we are not called upon to say. We are clear it cannot be permitted to relieve from the restraints upon the power of the State to tax property under the protection of the Federal Government. That the leases have the immunity of such protection we have decided.

In *Choctaw & Gulf R. R.* v. *Harrison*, 235 U. S. 292, the railroad company was the lessee of certain coal mines, obligating itself to take out annually specified amounts of coal and to pay a stipulated royalty. It proceeded actively

to develop the mines, either directly or through its agent, and took therefrom large quantities of coal and fully complied with the obligations assumed. The State of Oklahoma attempted to tax the company under the law of the State requiring every person engaged in the mining or production of coal to make a report of the kind and amount produced to the actual cash value thereof, and at the same time pay to the State Treasurer a gross revenue tax in addition to the taxes levied upon an *ad valorem* basis upon such mining property, equal to 2% of the gross receipts from the total production. The law was held to be invalid as attempting to tax an instrumentality through which the United States was performing its duty to the Indians.

The application of the case to that at bar needs no assisting comment. A tax upon the leases is a tax upon the power to make them, and could be used to destroy the power to make them. If they cannot be taxed as entities they cannot be taxed vicariously by taxing the stock, whose only value is their value, or by taking the stock as an evidence or measure of their value, rather than by directly estimating them as the Board of Equalization and the referee did. The assessment by the board was of the leases as objects of taxation, having no immunity under Federal law. This was repeated by the referee, and he made it clear that the assessment was so constituted. There was, he reports, a local assessment by the assessors of Osage and Washington counties of $52,830.02, and that the total value of the oil company's "property of every kind located in Oklahoma, over and above the amount locally assessed, was $447,169.98, on February 1, 1911," and he recommended a judgment for the latter amount. And, we repeat, there is no doubt of what elements it was composed. The gas business, he reports, was not "of itself profitable" but was "valuable as an adjunct to the company's oil operations." He was explicit as to what

the stock of the company represented, saying that "the total value of said company's stock, including all its property, tangible and intangible, on the first day of February, 1911, was $500,000." It is manifest, therefore, when the court took the stock as evidence of the value of the property of the company the court took it as evidence of the value of the leases and thereby justified their assessment and taxation. This, for the reasons we have stated, was error.

It follows from these views that the assessment against the oil company, so far as it included the leases, whether as separate objects of taxation or as represented or valued by the stock of the company, is invalid.

 *Judgment reversed and case remanded for further proceedings not inconsistent with this opinion.*