**CORONADO OIL & GAS CO. v. BURNET,**
Commissioner of Internal Revenue.

No. 5115.

Court of Appeals of District of Columbia.

Argued April 7, 1931.

Decided June 1, 1931.

MARTIN, Chief Justice, dissenting.

T. P. Gore, of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and J. L. Monarch, A. D. Sharpe, and C. M. Charest, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a petition to review a decision of the Board of Tax Appeals.

By Act of Congress approved June 16, 1906 (34 Stat. 267), the people of the territory of Oklahoma were authorized to form a Constitution preliminary to admission to statehood. In section 3 of the act, Congress required as a condition of admission that "provisions shall be made (in the constitu-

tion) for the establishment and maintenance of a system of public schools, which shall be open to all the children of said State and free from sectarian control"; and by section 7 Congress granted to the state, for the use and benefit of the common schools, the sections of land numbered 16 and 36 in every township in Oklahoma territory, and provided (section 8) that all lands granted by the act valuable for minerals, gas, and oil should not be sold by the state prior to January 1, 1915, but might be leased for periods not exceeding five years, the proceeds from the land so leased to be covered into the school fund. The Constitution as adopted provided for the establishment of a public free school system, and pledged the faith of the state to preserve such lands and moneys "as a sacred trust," and to keep the same for the uses and purposes for which they were granted or donated, and provision was made for an executive department, to be known as "commissioners of land office," to which was given the management of the school lands and of the funds derived therefrom. After admission to statehood, the Legislature (Statutes of 1921, § 9415 et seq.) provided by law for the leasing of the lands containing oil and gas for a first term of five years with the right of renewal for a second term of five years at a fixed royalty to be determined by the commissioners of the land office, but in no event less than 12½ per cent. of the total output of such oil and gas. The conditions of the leases are prescribed by statute, and, when made, are subject to all lawful rules which the commissioners may adopt. The right of the lessee to assign is forbidden except with the written consent of the commissioners, and provision is made for a sufficient bond to secure faithful performance. The leases provide that the state under certain circumstances shall have the preference right to purchase and take the entire output of oil and gas produced at the then market value of the same.

Appellant is an Oklahoma corporation. Its entire income during 1917, 1918, 1919, was derived from its operations as a lessee of the state of Oklahoma under two oil and gas leases executed to it by the state upon portions of the public school lands of the state. Appellant agreed to pay a royalty of 50 per cent. of the gross production of oil in consideration of the leasing of the land to it. The question which we have to decide is whether the income derived by appellant from the sale of its share of the oil and gas obtained from such leased lands is taxable as income under the federal income statutes. Revenue Act of 1916, 39 Stat. 756; Rev. Act 1917, 40 Stat. 300; Rev. Act 1918, 40 Stat. 1057. These acts in terms include the character of income in question, but appellant insists that it is an agency or instrumentality of the state of Oklahoma for development and operation of its state school lands, and that, under the Constitution, the United States cannot tax such agency or instrumentality.

Neither a state nor the United States can tax the property, governmental functions, agencies, or instrumentalities of the other, or the means by which they are exercised. "As the states cannot tax the powers, the operations, or the property of the United States, * * * so it has been held that the United States have no power under the Constitution to tax either the instrumentalities or the property of a state." Pollock v. Trust Co., 157 U. S. 429, 584, 15 S. Ct. 673, 690, 39 L. Ed. 759. But it frequently happens that cases arise in which "the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction which permits both to function with the minimum of interference each with the other," Metcalf & Eddy v. Mitchell, 269 U. S. 514, 523, 46 S. Ct. 172, 174, 70 L. Ed. 384, and hence the limitation, as applicable to both state and nation, has been the subject of discussion in numerous cases in the Supreme Court, and that court has adjusted the general principle to the limitation in the differing facts of each case, though in many the line of separation is sometimes so faint as to be difficult to follow, or, as Mr. Justice Stone remarked in Metcalf & Eddy v. Mitchell (page 523 of 269 U. S., 46 S. Ct. 172, 174), "Experience has shown that there is no formula by which that line may be plotted with precision in advance." Nothing, however, appears in any opinion to which we have had access which would indicate any distinction between state taxation of federal agencies and federal taxation of state agencies, except that in South Carolina v. U. S., 199 U. S. 437, 26 S. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737, where the state was shown to have engaged in a private business, an excise tax was held valid, and presumably the profits or income of the business taxable, but the decision was placed on the ground that the thing in which the state was engaged was not governmental. In many of the cases in which tax laws were held invalid, the tax was sought to be applied to some governmental activity. Bank of New York v. New York County, 7 Wall. 26, 19 L. Ed. 60; Pollock v. Farmers'

Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759; Owensboro National Bank v. Owensboro, 173 U. S. 664, 19 S. Ct. 537, 43 L. Ed. 850. In other cases, taxes which imposed "incidental" burdens were regarded as not impinging the general principle of exemption. Home Ins. Co. v. New York, 134 U. S. 594, 10 S. Ct. 593, 33 L. Ed. 1025. But in South Carolina v. U. S., supra, it was held that, though the state received substantial profits which were devoted to public purposes, the business was taxable. Some more recent decisions of the Supreme Court have carried the doctrine of exemption farther than it was, by many, originally thought to extend. Thus sales of commodities to the government by a retailer have been held not subject to excise taxes, Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583, as has also income from royalties from the use of patents, Long v. Rockwood, 277 U. S. 142, 48 S. Ct. 463, 72 L. Ed. 824. On the other hand, in Baltimore Shipbuilding Co. v. Baltimore, 195 U. S. 375, 25 S. Ct. 50, 49 L. Ed. 242, state taxation of profits derived by a private corporation engaged in work for the government was held valid; and in Fidelity & Deposit Co. of Maryland v. Pennsylvania, 240 U. S. 319, 36 S. Ct. 298, 60 L. Ed. 664, it was held that contracts between private corporations and the United States do not render the corporation an essential governmental agency, or confer freedom from state taxation. And so it is insisted here on behalf of the Commissioner that, whatever exemption the state of Oklahoma may enjoy from federal taxation of its oil lands, this exemption does not extend to appellant, because, though the state may be engaged in the business of maintaining the schools, and thus in performing a governmental duty, 1 Dillon on Municipal Corporations (5th Ed.) § 37; 4 Dillon on Municipal Corporations (5th Ed.) § 1658; Claybrook v. City of Owensboro (C. C.) 23 F. 634; Attorney General ex rel. McRae v. Thompson, 168 Mich. 511, 134 N. W. 722, 725; Freel v. School, 142 Ind. 27, 41 N. E. 312, 37 L. R. A. 301; Bissell v. Davison, 65 Conn. 183, 32 A. 348, 29 L. R. A. 251; Howard v. Tacoma, 88 Wash. 167, 152 P. 1004, 1005, Ann. Cas. 1917D, 792, appellant is not, but, as a private corporation, is engaged in producing and selling oil and gas; that is to say, in a private business and not a governmental activity. And so it is insisted that the imposition of the tax does not interfere with or impose a burden upon the state; that it is not a tax upon the lands or upon the oil

or the gas, or the proceeds of the same which the state is entitled to receive, but is confined solely to that portion of the value of the gas and oil produced which appellant as a private corporation is entitled to have and use for its own account. In this aspect it is said that the case is much like Metcalf & Eddy v. Mitchell, supra, in which it was held that, where "the tax is imposed on the income of one who is neither an officer nor an employee of government and whose only relation to it is that of contract, under which there is an obligation to furnish service, for practical purposes not unlike a contract to sell and deliver a commodity," the tax is valid; and there is much strength and force in this argument, and, if the question were not, as we think, foreclosed, we are inclined to think we might feel impelled to adopt that view, but, as we see it, the Supreme Court has laid down the rule in Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 172, 66 L. Ed. 338, and Jaybird Mining Co. v. Weir, 271 U. S. 609, 46 S. Ct. 592, 70 L. Ed. 1112, by which we are controlled. In the Gillespie Case, the state of Oklahoma sought to impose a tax upon the net income derived by the lessee from leases of restricted Indian lands. Admittedly the lessee was an instrumentality used by the United States in carrying out their duties to the Indians, and therefore it was insisted the income derived by the lessee was not subject to taxation by the state. The state court held that, since the tax was not levied upon the Indians' income or share of the proceeds, the private share of the lessee was taxable. The Supreme Court reversed the state court, and Mr. Justice Holmes, speaking for the court, and quoting in part from Indian Territory Illuminating Oil Co. v. Oklahoma, 240 U. S. 522, 530, 36 S. Ct. 453, 60 L. Ed. 779, said:

" 'A tax upon the leases is a tax upon the power to make them, and could be used to destroy the power to make them.' The step from this to the invalidity of the tax upon income from the leases is not long.

"In cases where the principal is absolutely immune from interference an inquiry is allowed into the sources from which net income is derived and if a part of it comes from such a source the tax is pro tanto void, Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759; Id., 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108; a rule lately illustrated by Evans v. Gore, 253 U. S. 245, 40 S. Ct. 550, 64 L. Ed. 887, 11 A. L. R. 519; and applied in a case somewhat like the present by the Supreme Court of

Hawaii, Oahu Ry. & Land Co. v. Pratt, 14 Hawaii, 126. Whether this property could be taxed in any other form or not, it cannot be reached as profits or income from leases such as those before us. The same considerations that invalidate a tax upon the leases invalidate a tax upon the profits of the leases, and; stopping short of theoretical possibilities, a tax upon such profits is a direct hamper upon the effort of the United States to make the best terms that it can for its wards."

We are unable to observe any difference in fact, or to perceive any distinction in principle, between the Gillespie Case and that under consideration. In both there were oil lands. In the one case they were held by the federal government for the benefit of the Indians; in the other by the state for the benefit of its school children, white and Indian. In each there was a lease on a royalty basis; in each the lessee was a corporation or private person; and in each the tax imposed sought to reach alone its or his profits from the operation of the lease. It is obvious, therefore, that the only difference in the facts is that in the one case the person sought to be taxed was an instrumentality of the federal government and in the other of the state government. If the tax was invalid in the one, it seems to us it must be invalid in the other, for, as we have already seen, the two governments stand upon an equality in the right of exemption of their respective instrumentalities from taxation. Unless, therefore, there is a higher and different obligation on the federal government in the protection of the interests of the Indians than is on a state in the education of its youth, the principle as it applies to the one must, we think, apply equally to the other. There can be no doubt that the school lands held by the state of Oklahoma in trust for the education of the youth of that state are as immune from taxation by the federal government as the lands held by the federal government for the Indians are immune from state taxation. If, therefore, the lessee of restricted Indian lands is a governmental instrumentality, it seems to us necessarily to follow that the lessee of school lands of the state, under identical conditions, is a governmental instrumentality, and since, as the Supreme Court said in the Gillespie Case, the principle that invalidates a tax upon the leases likewise invalidates a tax upon the profits of the lessee, it must follow, we think, that the income from the leases cannot be taxed in the one case any more than in the other. But it was argued at the

bar of this court that, while the analogy of the two cases seems so nearly perfect, there is a difference growing out of the fact that the United States, being a government of restricted or granted powers, has no right to engage in private business, and therefore whatever it does is in pursuit of a governmental function, but that this is not also true of a state which is without restrictions upon its right to enter private business, and therefore it is contended, when a state undertakes to exploit its mineral or oil lands and sell the product thereof, it enters business as much as the state of South Carolina did when it engaged in the liquor business, but we are not convinced by this argument. While it may be true the United States has no right to transact private business, and while it may also be true that when it enters into competition with private business, as it has in the operations of the Shipping Board and the Housing Corporation, all its acts in connection therewith are of a governmental character, and, while it may be equally true that a state may engage in private business, the fact is that, in the exploitation of oil lands, like those in this and the Gillespie Case, both the state and federal governments are using property earmarked with a governmental purpose, in the pursuit of a duty enjoined upon each equally to create and preserve a fund in the one case for the Indians as wards of the nation, and in the other for the school children as wards of the state. It is, we think, the purpose, rather than the thing, which controls, but, if this is not correct, then the thing, i. e. the sale of the oil, is, in the case of the federal government, identically like that in the case of the state government, and it cannot be said that the one government can engage in what is ordinarily designated commerce and insist that because of its restricted powers it is engaged in the performance of a governmental function, and deny to a state in the same circumstances the same character, or classify its identical activity, because of its less limited powers, in a different category.

Unless, therefore, there is something in Group No. 1 Oil Corp. v. Bass, Collector Int. Rev. (April 13, 1931) 51 S. Ct. 432, 75 L. Ed. ——, which modifies or changes the principle pronounced in the Gillespie Case, supra, or which limits the immunity, there declared, solely to Indian lands under administration by the federal government, we shall feel impelled to hold, as we indicated, that the Gillespie Case controls this. The main facts in Group Oil Case in relation to its background

and machinery are essentially like the facts in the Gillespie Case and the case now under consideration. There, as here, the dispute arose over federal income taxes on profits derived by a private corporation from the sale of oil and gas produced under leases to it by a state (Texas). There, as here, immunity was claimed as an instrumentality of the State for the development of its public domain. There the land from which the oil was taken had been set apart for the benefit of the state university; here for the benefit of the school children of the state under a constitutional provision adopted pursuant to mandate of Congress in the grant of statehood. There, as here, the grant to the corporation was designated a lease, and there, as here, the return to the state was measured by a percentage of the oil produced. The distinction or difference between the Group Oil Case on the one hand and this case and the Gillespie Case on the other arises out of the fact that in Texas the Constitution of that state, as interpreted by the highest court of the state, "requires the Legislature to dispose of the University lands by sale only," Theisen v. Robison, 117 Tex. 489, 502, 8 S.W.(2d) 646, 648, and accordingly it was held in that case that leases like the one in Group Oil Co. Case were present sales to the lessees of the oil and gas in place without restriction and without retention of interest in the vendor or lessor; in other words, that, though denominated a lease, the transaction was in fact a sale of all the oil and gas in the particular land conveyed. And the Supreme Court in the Oil Group Case, adopting this construction of the Texas Constitution as binding, held the tax valid solely on that ground. But the same thing is not true of this case, for here there not only was no sale, but a congressional prohibition, accepted by the state, against one, and instead there was a lease with an agreed division of profits in all respects like that in the Gillespie Case where the tax was held invalid. And so we have to conclude that, unless we are mistaken in thinking there is no difference in the immunity from taxation of income derived from tribal lands of Indians and immunity from taxation of income derived from school lands of a state, where the income in each case arises under the same conditions, the principle applied in the Gillespie Case is applicable in this case, and the Board of Tax Appeals was wrong in holding otherwise, and its decision should be and is reversed, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.

MARTIN, Chief Justice, dissents from the foregoing decision, upon grounds which are fully stated in the majority opinion of the Board of Tax Appeals, included in this record, and also reported in 14 B. T. A. 1214.