## MARLAND v. UNITED STATES.

### No. K-322.

Court of Claims.

Dec. 7, 1931.

David A. Richardson, of Oklahoma City, Okl. (Samuel W. Hayes and Hayes & Richardson, all of Oklahoma City, Okl., on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (George H. Foster, Fred K. Dyar, Bradley B. Gilman, and Ottamar Hamele, all of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The plaintiff in this case seeks to recover with interest the sum of $1,236,437.17, which was collected from him as federal income and profits taxes for the years 1917, 1918, and 1919 upon income and profits earned and received by him in the development and operation of certain of the Oklahoma state school lands leased to him by said state for the purpose of obtaining oil and gas therefrom, and also upon income from the sale of leases of a portion of said land. After the collection of the taxes and within due time, the plaintiff filed an application for refund of said taxes on the ground, in substance, that such income was not subject to tax on the part of the federal government and if any of its laws so provided they were unconstitutional and void. It is contended on behalf of the government that the tax was constitutionally assessed and collected, and this constitutes the whole issue in the case.

We shall not enter into any extended argument or discussion as to the law applicable to the case for the reason that we think the questions involved have been decided by the Supreme Court.

The act of Congress authorizing the formation of the state of Oklahoma and its admission into the Union required as a condition of admission that provision should be made for the establishment and maintenance of a system of public schools. In the same act, Congress granted to the state, for the use and benefit of the common schools, certain lands within this territory and provided that all lands granted by the act valuable for minerals, gas, and oil should not be sold prior to a certain date but might be leased, the proceeds from the land to be covered into the school fund. The constitution of the state, as adopted, provided for the establishment of a free school system and the use of such lands and moneys for the benefit of the public schools. The plaintiff herein leased certain of these lands from the state of Oklahoma under conditions prescribed by the statute, which required the development thereof. Through such development and operation of these leases and by the sale of leases of said land to others, the plaintiff received income as stated above. Under the facts in the case the question to be determined is whether the United States can constitutionally levy a tax upon this income.

Counsel for plaintiff lay down the broad principle that neither the instrumentalities of the state nor of the federal government, employed in the execution of their governmental powers, can be the subject of taxation by the other. But the Supreme Court in the case of Metcalf & Eddy v. Mitchell, 269 U. S. 514, 522, 46 S. Ct. 172, 174, 70 L. Ed. 384, said: "Just what instrumentalities of either a state or the federal government are exempt from taxation by the other cannot be stated in terms of universal application."

While this case does not determine that the lessee of land owned by the national government or a state is not such an instrumentality, although the land is leased for a governmental purpose, we think the reasoning of the opinion therein and other cases decided by the Supreme Court might lead to such a

conclusion, and would be inclined to so hold were it not that the Supreme Court appears to have laid down a different rule in the case of Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 172, 66 L. Ed. 338.

In the case of the Coronado Oil & Gas Co. v. Burnet, 50 F.(2d) 998, 1001, the Court of Appeals of the District of Columbia, in passing on a similar case to the one at bar, said: "We are unable to observe any difference in fact, or to perceive any distinction in principle, between the Gillespie Case and that under consideration." And the court went on to show by comparison that so far as the application of the principle in controversy is concerned the facts in the two cases presented the same question. We concur in this conclusion of the Court of Appeals and feel constrained by the decision in the Gillespie Case, supra, to hold that the federal government could not constitutionally tax the income of plaintiff derived through operations under the leases made to him by the state of Oklahoma. There is, however, another question to be determined.

Defendant contends that even if the income derived by plaintiff from operations under the leases obtained from the state was exempt, the profits received by plaintiff during the years 1918 and 1919 from sales of leases, the total amount of which was $2,595,766.08, were not exempt but subject to tax. It is quite obvious that a tax could not be levied directly upon the leases themselves. In Indian Territory Illuminating Oil Co. v. Oklahoma, 240 U. S. 522, 530, 36 S. Ct. 453, 456, 60 L. Ed. 779, it was said: "A tax upon the leases is a tax upon the power to make them, could be used to destroy the power to make them." And in Gillespie v. Oklahoma, supra, as one of the reasons for the decisions the court said, referring to the language just quoted: "The step from this to the invalidity of the tax upon income from the leases is not long."

But in Willcuts v. Bunn, 282 U. S. 216, 51 S. Ct. 125, 75 L. Ed. 304, it was held that the profits realized from the sale of municipal bonds were taxable, and that the case of Gillespie v. Oklahoma, supra, was not analogous. In the Willcuts Case the municipal bonds were obtained by purchase; in this case the leases were obtained by direct contract. In the Willcuts Case an outstanding fact was found to be the long practice of the federal government to tax profits from the sale of such securities without anything appearing to indicate as a result of this practice that the tax laid any material burden upon the power of the municipality to borrow money. In the case at bar there is no direct evidence which bears either way on this point, but on the whole we think the case of Willcuts v. Bunn is authority for holding that the profits realized from the sale of an assignable contract are subject to tax, notwithstanding such a contract is governmental in its nature. If we are correct in this conclusion, it follows that the income from the sale of leases is subject to tax and that plaintiff's recovery should be limited accordingly. Under this conclusion the stipulation of the parties and the findings of fact fix plaintiff's recovery at $153,582.38. This amount was included in the last payment which plaintiff made on his taxes and will draw interest from the date thereof, November 6, 1926. Judgment will be rendered accordingly.

BOOTH, Chief Justice, and WHALEY and WILLIAMS, Judges, concur.

LITTLETON, Judge (concurring).

The first issue is whether the income derived by a lessee of Oklahoma school lands from the operation of oil and gas wells under a lease from the state of Oklahoma is exempt from taxation and depends upon whether the establishment and maintenance by the state of a system of public schools were essential governmental functions, and, if so, whether the granting by the state of oil and gas leases on lands owned by it and devoted exclusively to school purposes was the exercise of a governmental power of such a character as would exempt the instrumentalities employed by the state from taxation by the federal government.

Section 3 of the Enabling Act of Congress, approved June 16, 1906, 34 Stat. 267, entitled "An Act To enable the people of Oklahoma and of the Indian Territory to form a constitution and State government and be admitted into the Union on an equal footing with the original States," provides, "That provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all the children of said State. * * * *" Section 7 provides, "That upon the admission of the State into the Union sections numbered sixteen and thirty-six, in every township in Oklahoma Territory, and all indemnity lands heretofore selected in lieu thereof, are hereby granted to the State for the use and benefit of the common schools. * * *"

By section 8 of the Enabling Act the United States granted to the state of Oklahoma certain other lands "for the use and benefit of

the University of Oklahoma and the University Preparatory School, one-third; of the normal schools now established or hereafter to be established, one-third; and of the Agricultural and Mechanical College and the Colored Agricultural Normal University, one-third. The said lands or the proceeds thereof as above apportioned shall be divided between the institutions as the legislature of said State may prescribe: Provided, That the said lands so reserved or the proceeds of the sale thereof shall be safely kept or invested and held by said State, and the income thereof, interest, rentals, or otherwise, only shall be used exclusively for the benefit of said educational institutions. Such educational institutions shall remain under the exclusive control of said State, and no part of the proceeds arising from the sale or disposal of any lands herein granted for educational purposes, or the income or rentals thereof, shall be used for the support of any religious or sectarian school, college, or university." This section further provided that where any of the lands granted were valuable for minerals, which terms included gas and oil, such lands should not be sold by the state prior to January 1, 1915, but might be leased by the state by public competition after due advertisement, and that all such leasing should be done under sealed bids and awarded to the highest responsible bidder.

Section 9 provided that said sections 16 and 36, and the lands taken in lieu thereof, granted for the support of common schools, if sold, might be appraised and sold at public sale in 160-acre tracts or less under such rules and regulations as the Legislature of the state might prescribe; but that said lands might be leased for periods not to exceed ten years.

Section 22 of the Enabling Act provides, "That the constitutional convention provided for herein shall, by ordinance irrevocable, accept the terms and conditions of this Act."

In section 1 of article 11 of the Oklahoma Constitution, the grant contained in the Enabling Act was accepted in the following language: "The State hereby accepts all grants of land and donations of money made by the United States under the provisions of the Enabling Act, and any other Acts of Congress, for the uses and purposes and upon the conditions, and under the limitations for which the same are granted or donated; and the faith of the State is hereby pledged to preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated."

The state thus assumed in its sovereign capacity the obligation to establish and maintain such a system of public schools as a governmental power and function. Section 32 of art. 6 of the Oklahoma Constitution, creating a branch of the executive department known as the commissioners of the land office, to which was given the management of school lands of the state and of the funds derived therefrom, provided that the commissioners of the land office should be composed of the Governor, the secretary of state, the state auditor, the superintendent of public instruction, and the president of the board of agriculture.

The First Legislature of the State of Oklahoma enacted certain provisions with reference to the lands granted by the Enabling Act, and these enactments are found in sections 9415 to 9424 of Comp. Stats. of 1921, with respect to the leasing of state-owned lands. Section 9423 provides that: "The proceeds derived in bonuses and royalties and from other inducements and considerations for the execution and operation of the oil and gas leases in this article provided, shall be carried in the several funds, for the use and benefit of which such lands were granted by the United States to the State of Oklahoma, and to the territory now comprising the area embraced within the said State, under the provisions of the enabling act, and any and all other acts of Congress, for the uses and purposes, and upon the conditions, and under the limitations for which the same were granted; and the money resulting from such lease and from the operation thereof shall be handled, disposed of and used in like manner as the other moneys belonging to said several funds under the laws of this State."

Section 5 of article 11 of the Oklahoma Constitution deals with the lands granted by section 8 of the Enabling Act for the use and benefit of the University of Oklahoma, the University Preparatory School, the state normal schools, and the state agricultural and mechanical colleges. These are all state schools, established and maintained as such, and constitute a part of the state's educational system (Comp. Okla. Stat. 1921, c. 86); and the provisions of the Enabling Act (section 8) and the legislation of the state (sections 9415 and 9424, Comp. Okla. Stat. 1921) respecting the leasing for oil and gas purposes apply equally to those lands.

It was under and pursuant to the foregoing constitutional and statutory provisions

that all of the leases to the plaintiff were executed.

It is argued by the defendant that this issue is not analogous to the question decided by the court in Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338, for the reason that in the Gillespie Case the United States acted in its capacity as a guardian of the Indian wards and that this was strictly a governmental function of the highest character; that the employment by the United States of instrumentalities in the operations on Indian lands related to the carrying out by the sovereign of its treaty obligations, or obligations imposed by Congress with the Indians; and that the obligations of the United States and the nature of its functions in carrying them out were the same whether arising under the treaty with the Indians or under an act of Congress. It is therefore insisted by the defendant that the establishment and maintenance of schools and colleges by the state of Oklahoma are not governmental functions of the character with which the court was concerned in the Gillespie Case and are not the exercise of a strictly governmental power that will exempt from taxation the instrumentalities employed by the state as a means of carrying on operations upon state-owned school lands. It is further argued by the defendant that the state of Oklahoma held these lands as a proprietor rather than as a guardian, and that its operations thereon, either in its sovereign capacity or in conjunction with some other instrumentality selected by it, partake of the nature of private business, and under the rule laid down by the court in South Carolina v. United States, 199 U. S. 437, 26 S. Ct. 110, 113, 59 L. Ed. 261, 4 Ann. Cas. 737, and Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384, the income derived from such operation is not exempt from taxation under constitutional immunity contended for by the plaintiff. In support of this contention the defendant points out that a circular issued in 1924 by the United States General Land Office shows that the federal government has granted its various states for school purposes the total of 171,789,775.92 acres of land, the school lands in Texas being additional, and that these lands are leased by the state for grazing and agricultural purposes and for oil and mineral developments, and argues that the logic of a decision holding that the granting of oil and gas leases for the exploration and removal of oil and gas from these lands, resulting in the receipt of income, would inevitably lead to further exemption; that if the farming and mining operations of a state's

lessee are immune from federal taxation, no limitation could be placed on the application of the exemption rule; that the danger involved in such holding was pointed out in South Carolina v. United States, supra. And if these oil and gas operations of the state of Oklahoma are held to be of a strictly governmental character, every other activity connected with the use of state-owned lands would partake of the same character; that at the power sites on these lands the state might construct dams and develop and market hydroelectric power, and, in connection with the same dams, it might build and operate irrigation systems and sell water rights for reclamation purposes; that, in order to convey these crops into the most profitable form, it might build and run mills and factories; it might open and work mines of coal and iron, develop stone quarries, and engage in the lime and cement business; that, for the purpose of securing the utmost return from its holdings, the state might enter each and every business connected with the utilization of the soil, limited only by the natural capacity of the real estate owned; that no distinction can be drawn between the activities just mentioned and the operations for oil and gas involved in this case; and that if the income of the plaintiff in this case is held to be exempt, all activities of the character above mentioned would be strictly governmental, because they would involve the development of the state's property. It is finally urged that every such power plant, irrigation system, farm, mine, quarry, limekiln, cement works, mill, and factory when leased by the state would carry with the lease exemption from federal taxation of all profits made therefrom by the lessee and this would provide the situation which the court evidently had in mind when it decided South Carolina v. United States, supra, in which the court said: "Mingling the thought of profit with the necessity of regulation may induce the state to take possession, in like manner, of tobacco, oleomargarine, and all other objects of internal revenue tax. If one state finds it thus profitable, other states may follow, and the whole body of internal revenue tax be thus stricken down." The contentions of the defendant seem to overlook the fact that it is not the extent of the activities of a state that determines the exemption, but the nature and character of power by which it performs them. The granting by the state of Oklahoma of the leases in this case did not arise from the necessity or power of regulation but in the exercise by the state of a sovereign power in the fulfillment of an essential governmental

obligation to establish and maintain a system of public schools. In Indian Motorcycle Co. v. United States, 283 U. S. 570, 51 S. Ct. 601, 75 L. Ed. 1277, the court pointed out that "the reasons underlying the principle mark the limits of its range," and that "where the principle applies it is not affected by the amount of the particular tax or the extent of the resulting interference, but is absolute."

The establishment and maintenance of a system of public schools, state colleges, and universities by the state in conformity with the provisions of its Constitution and its laws are essential governmental functions. School District v. Zediker, 4 Okl. 599, 603, 47 P. 482; Board of Education v. State, 26 Okl. 366, 370, 109 P. 563; State ex rel. v. Ross, 76 Okl. 11, 183 P. 918; Consolidated School District No. 1 v. Wright, 128 Okl. 193, 261 P. 953, 56 A. L. R. 152; Claybrook v. City of Owensboro (C. C.) 23 F. 634; Harris v. Salem School District, 72 N. H. 424, 57 A. 332; Scown v. Czarnecki, 264 Ill. 305, 106 N. E. 276, 279, L. R. A. 1915B, 247, Ann. Cas. 1915A, 772. In City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 828, 66 So. 237, 240, the court said: "Education insures domestic tranquillity, provides for the common defense, promotes the general welfare, and it secures the blessings of liberty to ourselves and our posterity. It has ever been recognized as a function of government by all the states of the Union. * * * The free school system being one of the instrumentalities or functions of the government of the state of Maryland, it cannot be interfered with by the state of Louisiana or any of its citizens."

A state may own real estate in three distinct characters: First, as a sovereign and not as a proprietor, such as a bed of navigable water which is held for public use; secondly, as a proprietor and not as a sovereign, such as land owned by one state but situated in another and property acquired by the state with which to carry on a business such as was involved in South Carolina v. United States, supra; and, thirdly, in the joint character of sovereign and proprietor. In this class school land owned by Alabama as a proprietor and situated in Nebraska was held to be nontaxable. Stoutz v. Brown, 5 Dill. 445, Fed. Cas. No. 13505. And school land owned by Maryland as a proprietor and situated in Louisiana was also held to be nontaxable. City of New Orleans v. Salmen Brick & Lumber Co., supra. The school lands owned by Oklahoma within its own limits come within this category.

In view of the conclusion that the establishment and maintenance of a system of public schools by the state are essential governmental functions, its transactions with reference to the lands owned and devoted exclusively to school purposes and the means and instrumentalities employed by it, in performing this function, fall within the class which the United States cannot tax consistently with the constitutional principle. Dobbins v. Commissioners of Erie County, 16 Pet. 435, 448, 449, 10 L. Ed. 1022; Collector v. Day, 11 Wall. 113, 124, 20 L. Ed. 122; Western Union Telegraph Co. v. Texas, 105 U. S. 460, 466, 26 L. Ed. 1067; Williams v. City of Talladega, 226 U. S. 404, 418, 419, 33 S. Ct. 116, 57 L. Ed. 275; Choctaw, Oklahoma & Gulf R. Co. v. Harrison, 235 U. S. 292, 35 S. Ct. 27, 59 L. Ed. 234; Indian Territory Illuminating Oil Co. v. State of Oklahoma, 240 U. S. 522, 36 S. Ct. 453, 60 L. Ed. 779; Howard v. Gypsy Oil Co., 247 U. S. 503, 38 S. Ct. 426, 62 L. Ed. 1239; Large Oil Co. v. Howard, 248 U. S. 549, 39 S. Ct. 183, 63 L. Ed. 416; Gillespie v. State of Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338; Jaybird Mining Co. v. Weir, 271 U. S. 609, 46 S. Ct. 592, 70 L. Ed. 1112; Panhandle Oil Co. v. Mississippi ex rel. Knox, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583. In Indian Motorcycle Co. v. United States, 283 U. S. 570, 575, 51 S. Ct. 601, 602, 75 L. Ed. 1277, the court, in holding that the federal government could not impose and collect a manufacturers' excise tax upon the sale of motorcycles to the police department of a municipality, said: "It is an established principle of our constitutional system of dual government that the instrumentalities, means and operations whereby the United States exercises its governmental powers are exempt from taxation by the states, and that the instrumentalities, means and operations whereby the states exert the governmental powers belonging to them are equally exempt from taxation by the United States. This principle is implied from the independence of the national and state governments within their respective spheres and from the provisions of the Constitution which look to the maintenance of the dual system. Collector v. Day, 11 Wall. 113, 125, 127, 20 L. Ed. 122; Willcuts v. Bunn, 282 U. S. 216, 224, 225, 51 S. Ct. 125, 75 L. Ed. 304. Where the principle applies it is not affected by the amount of the particular tax or the extent of the resulting interference, but is absolute."

Salaries paid by the state to persons employed by it in the maintenance of schools and colleges and as instructors therein would be

exempt from taxation. Dobbins v. Commissioners of Erie County, supra. And if it should happen that the state in the operation of such schools and colleges, including operations and all transactions with reference to property devoted exclusively thereto, should derive an income, the state would not be taxable thereon by the federal government. Likewise, if the state of Oklahoma in this case had operated the oil and gas wells on the state-owned lands in question, the income of which belonged exclusively to the school fund, it would not be taxable thereon. The plaintiff was an instrumentality employed by the state in the performance of its governmental functions and the income derived by him from the operation of oil and gas wells under the leases was exempt from taxation by the United States.

The second issue is whether the net 'profit of $377,320.55 derived by the plaintiff upon the sale by him in 1918 of a lease which he had theretofore entered into with the state of Oklahoma and the net profit of $2,218,445.53 derived by him in 1919 upon sale by him of certain leases theretofore granted to him by the state of Oklahoma, totaling $2,595,766.08, were exempt from taxation by the federal government. The precise question presented is the constitutionality of a tax on income to the extent that such income includes net gains derived by the owner of leases on state-owned school lands from the sale of such leases.

When the plaintiff made a sale at a net profit to him of the leases which had been granted to him by the state, he was not acting as an instrumentality of the state, nor can it be said that the imposition of a tax upon such net profit would hamper or burden the state in the exercise of its governmental functions. The relation of the state to plaintiff's profits on the sale of leases is one step more distant than its relation to his profits in operating under the leases in conjunction with the state. This fact gives an added reason for denying plaintiff's claim as to the net profits upon the sale. Willcuts v. Bunn, supra. The reasons given by the court for holding in the Willcuts Case that a profit derived from the sale

of municipal bonds is taxable are applicable to the net gain derived by the plaintiff from the sale of the leases in question. The relation of the tax to the lease in this case is, if anything, more remote than a tax on transfers of decedents' estates measured by a value which includes exempt securities. There the tax upon transfers is certain if the value of the property reaches the statutory requirements. Here the tax is upon a net gain derived from a transfer in the form of a sale, and the contingencies of gain from the sale, as well as the fact of net income in a taxable amount, are added conditions precedent which render the prospective tax one step more remote. Moreover, the injury here is neither obvious nor appreciable. As was said by the court in Willcuts v. Bunn, supra, 282 U. S. at page 230, 51 S. Ct. 125, 129, 75 L. Ed. 304: "No facts as to actual consequences are brought to our attention, either by the record or by argument, showing that the inclusion in the federal tax of profits on sales of state and municipal bonds casts any appreciable burden on the state's borrowing power. We are left to the inadequate guidance of judicial notice." And again, at page 231 of 282 U. S., 51 S. Ct. 125, 129: "Indeed, the existence of the illegal burden might be more easily assumed in the case of the estate tax, where the entire value of the securities, and not merely gains on sales, are taken into the reckoning in determining the amount of the tax." Finally, at page 234 of 282 U. S., 51 S. Ct. 125, 130, it said: "The history of income tax legislation is persuasive, if not controlling, upon the question of practical effect. Plummer v. Coler, supra (pages 137, 138 of 178 U. S., 20 S. Ct. 829, 837, 838 [44 L. Ed. 998]). Before the power of the Congress to lay the excise tax in question can be denied in the view that it imposes a burden upon the States' borrowing power, it must appear that the burden is real, not imaginary; substantial, not negligible."

The provision in the leases requiring the consent of the commissioners of the land office of the state to their sale or transfer does not have the effect of exempting the profits derived upon such sale from taxation.